2005 ME 82

**STATE of Maine**

v.

**Sally A. SCHOFIELD.**

Supreme Judicial Court of Maine.

Argued: March 11, 2003.
Reargued: Sept. 23, 2004.
Decided: June 29, 2005.
Opinion on Rehearing Nov. 16, 2005.

G. Steven Rowe, Atty. Gen., Charles K. Leadbetter, State Sol. (orally), William R. Stokes, Deputy. Atty. Gen. (orally), Augusta, for State.

Jed Davis (orally), Aglaia Davis (orally), Jim Mitchell and Jed Davis, P.A., Augusta, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

Majority: SAUFLEY, C.J., and DANA, CALKINS, and LEVY, JJ.

Dissent: CLIFFORD, RUDMAN, and ALEXANDER, JJ.

DANA, J.

[¶ 1] In this appeal we consider the United States Supreme Court's recent Sixth Amendment jurisprudence as applied to an upper tier sentence—one greater than twenty years of imprisonment—based on a defendant's conviction of a Class A crime imposed pursuant to 17–A M.R.S.A. § 1252(2)(A) (Supp.2001).

[¶ 2] Pursuant to 15 M.R.S.A. §§ 2151–2157 (2003) and M.R.App. P. 20, Sally A. Schofield was granted leave to appeal from the sentence imposed on her by the Superior Court (Kennebec County, *Delahanty, J.*) following her conviction for manslaughter (Class A) in violation of 17–A M.R.S.A. § 203(1)(A) (1983 & Supp.2000).[1]  Scho-

---

1. The manslaughter statute has been amended since the commission of this crime. P.L. 2001, ch. 383, § 9 (effective January 31, 2003) (codified at 17–A M.R.S.A. § 203(1)(A) (Supp. 2004)).

field was sentenced to a prison term of twenty-eight years, with all but twenty years suspended, to be followed by six years of probation. She contends, relying on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), that (1) her waiver of her right to a jury trial on the merits did not extend to her right to have the jury determine, beyond a reasonable doubt, any fact necessary to increase her sentence beyond twenty years; (2) Maine's statute permitting a court to sentence her to more than twenty years if it finds her conduct to be "among the most heinous crimes" violates the Sixth Amendment of the United States Constitution; and (3) the error was such that we should consider it on appeal even though it was not raised at the trial court. Because we agree with her contentions, we vacate her sentence and remand for resentencing.

## I. FACTUAL AND PROCEDURAL HISTORY

[¶ 3] Schofield worked as an adoption caseworker for the Department of Human Services [2] from the early 1990s until November of 2000. In September of 2000, five-year-old Logan Marr and her two-year-old sister were removed from the custody of their mother and subsequently placed in Schofield's home in Chelsea. Logan had experienced substantial trauma in her short life and exhibited difficult behavior while in Schofield's custody. For example, she had "melt-downs," went into rages, and screamed uncontrollably. To deal with this behavior, Schofield invoked progressively longer time-out periods, which often involved covering Logan with a blanket, or lying on top of her while bargaining with Logan for the release of one limb at a time. The court found that the relationship between Logan and Schofield became a test of wills.

[¶ 4] On the afternoon of January 31, 2001, Logan's behavior so infuriated Schofield that she took Logan to the cluttered basement storage room in her home and placed her in a high chair facing a blank concrete wall. As the court found:

> [Schofield] secured Logan to the high chair by wrapping layers of duct tape around Logan's torso and behind the back of the chair to prevent her from getting out. To silence her screams she wrapped more duct tape under her chin, over her head and across her mouth. Having already violated the [Department] rules of discipline by physical confinement, Ms. Schofield then left Logan to struggle against her bonds in isolation.

Logan died in that chair of mechanical asphyxia.

[¶ 5] Schofield was indicted for depraved indifference murder, 17–A M.R.S.A. § 201(1)(B) (1983),[3] and manslaughter, 17–A M.R.S.A. § 203(1)(A). During Schofield's jury-waived trial held in June of 2002, the court granted Schofield's motion for a judgment of acquittal as to the charge of depraved indifference murder, concluding that the evidence was insufficient to support the charge. The court found Schofield guilty of manslaughter and ordered a presentence investigation.

[¶ 6] At the sentencing hearing, the State presented the testimony of a number

---

**2.** In 2004, the Legislature established the Department of Health and Human Services, which has subsumed the Department of Human Services and the Department of Behavioral and Developmental Services. P.L. 2003, ch. 689 (effective July 1, 2004).

**3.** This statute has been amended since the alleged commission of the crime charged. P.L. 2001, ch. 383, § 8 (effective January 31, 2003) (codified at 17–A M.R.S.A. § 201(1)(B) (Supp. 2004)).

of witnesses, various members of Logan's family, and Logan's guardian ad litem. The State recommended to the court that Schofield be sentenced to thirty years in prison with no part of that sentence suspended. Schofield presented comparative information regarding sentences imposed in other manslaughter cases involving child deaths, as well as the testimony of a number of her family members and friends.

[¶ 7] In imposing its sentence, the court stated on the record its reasons for determining that the nature and seriousness of Schofield's crime was sufficient to justify a sentence in excess of twenty years, pursuant to section 1252(2)(A):

> It became a test of wills between Logan and Sally, and Sally Schofield was determined to win out. She couldn't accept the fact that a five-year-old Logan might get the best of her. And yet despite all of her training and all of her experience and knowledge of children in foster care and her awareness of the rules and regulations, she acted recklessly when she restrained Logan in the basement to fight her bonds in solitude and silence.
>
> The situation developed over time, and the conduct leading to the actual death, however, did not happen in a momentary lapse. The defendant's conduct in restraining Logan recklessly led to her death. At any time during the process of restraining her she could've closed the door instead of putting the gag around her. She could've turned up the radio if she wanted to drown out the sounds of Logan making noise and yelling. Putting her in restraints was

against the rules and regulations of the placement. But even if she had done that, by placing the duct tape around the head and as was disclosed-described as clamping her mouth shut, Logan had no chance.

> This case is most serious, and the Court believes that the base sentence in this case falls in the 20 to 25-year range. With the enhancement called for in the death of a child under the age of six, the Court fixes the base sentence at 28 years.

[¶ 8] The court determined that the circumstances of the case did not call for any adjustment from the base sentence. The court suspended eight years of the twenty-eight-year sentence, and ordered Schofield to serve six years of probation following her release from incarceration.

[¶ 9] At the time of Schofield's sentencing, section 1252(2)(A) authorized a sentence not to exceed forty years, and we had previously construed the statute as creating two tiers of sentences for Class A offenses: a lower tier of up to twenty years for most offenses, and an upper tier of between twenty and forty years for "the most heinous and violent crimes committed against a person." *State v. Lewis*, 590 A.2d 149, 151 (Me.1991).[4]

[¶ 10] We granted Schofield leave to appeal her sentence. *See* 15 M.R.S.A. § 2152; M.R.App. P. 20(g), (h).

## II. DISCUSSION

### A. Whether Schofield Waived Her Sixth Amendment Rights

[¶ 11] As a preliminary matter, we are unpersuaded by the State's asser-

---

4. In 2004, section 1252(2)(A) was amended by P.L. 2003, ch. 657, § 10 (effective July 30, 2004) (codified at 17-A M.R.S.A. § 1252(2)(A) (Supp. 2004)), to provide: "In the case of a Class A crime, the court shall set a definite period not to exceed 30 years." This legislation indicated in its statement of fact that it was designed to eliminate a "constitutional cloud" created by *Apprendi* by eliminating what it characterized as the two-tier system and replacing it with "a single 0– to 30–year range." L.D. 1844 Statement of Fact (121st Legis. 2004).

tion that Schofield, by waiving her right to a jury trial, also waived any Sixth Amendment rights announced in *Blakely*. The United States Supreme Court has stated that there is a general presumption against the waiver of constitutional rights. *Michigan v. Jackson,* 475 U.S. 625, 633, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). Any waiver of Schofield's Sixth Amendment rights must be knowing and voluntary. *See State v. York,* 1997 ME 156, ¶ 6, 705 A.2d 692, 694; *State v. Staples,* 354 A.2d 771, 776 (Me.1976).

[¶ 12] Because Schofield, prior to *Blakely,* did not know that she had a right to have a jury determine, beyond a reasonable doubt, any facts necessary to increase her sentence beyond twenty years, *see infra* Part B, her waiver extends only to the findings necessary to determine her guilt or innocence to the charge of manslaughter. It does not extend to findings that would serve to double the maximum sentence she faced upon conviction. *See State v. Williams,* 197 Or.App. 21, 104 P.3d 1151, 1152–53 (2005) (holding that a pre-*Blakely* waiver of a right to a jury trial did not extend to a right to have a jury determine sentencing facts). A waiver of a right to a jury trial on the elements of a crime does not extend beyond those elements, just as Blakely's waiver of his trial rights in pleading guilty did not constitute a waiver of his right to have a jury determine aggravating factors. *See Blakely,* 542 U.S. at 299–304, 124 S.Ct. at 2535–38. Contrary to the State's assertion, if we conclude that Schofield has a Sixth Amendment right to a jury trial on the factual findings required to increase her sentence into the upper tier range, that right was not extinguished by her initial jury waiver.

### B. Whether an Upper Tier Sentence Determination Must be Made by a Jury

[¶ 13] Schofield was sentenced pursuant to section 1252(2)(A), which, prior to its recent amendment, provided, in relevant part:

In the case of a Class A crime, the court shall set a definite period not to exceed 40 years. The court may consider a serious criminal history of the defendant and impose a maximum period of incarceration in excess of 20 years based on either the nature or seriousness of the crime alone or the nature and seriousness of the crime coupled with the serious criminal history of the defendant.

17–A M.R.S.A. § 1252(2)(A) (Supp.2001).

[¶ 14] In *Lewis,* decided before the addition in 1995 of the second sentence to section 1252(2)(A), we concluded that the statute provided two tiers of sentences for Class A offenses: up to twenty years for most offenses, and between twenty and forty years for "the most heinous and violent crimes committed against a person." 590 A.2d at 151. We determined that a sentence in excess of twenty years may not be imposed without this finding. *Id. See also State v. Hewey,* 622 A.2d 1151, 1155 (Me.1993) (stating that "it is well established that there are two limits within which an offender's maximum period of incarceration may fall for the commission of a Class A offense"); *State v. Mac-Donald,* 1998 ME 212, ¶ 15, 718 A.2d 195, 199.[5]

[¶ 15] In the wake of *Lewis,* the Legislature amended the statute to add the second sentence. P.L. 1995, ch. 473, § 1 (effective September 29, 1995). That amendment referenced the two-tier approach of *Lewis,* although it added an ad-

---

5. In *State v. Sweet,* 2000 ME 14, ¶ 18, 745 A.2d 368, 374, we concluded that a crime could qualify for an extended range sentence even if it was not violent as long as it was sufficiently heinous.

ditional ground upon which a court may base a sentence exceeding twenty years: "the serious criminal history of the defendant." *Id. See also* L.D. 546 Statement of Fact (117th Legis. 1995). Because the Legislature's 1995 amendment incorporated the two-tier approach of *Lewis,* we are foreclosed from revisiting our interpretation in *Lewis. See Myrick v. James,* 444 A.2d 987, 1000 (Me.1982).

[¶ 16] Schofield had no criminal history prior to the death of Logan Marr, and, therefore, the court's sentence of twenty-eight years was permissible pursuant to section 1252(2)(A) only if the court determined that Schofield's offense was among the most heinous and violent offenses committed against a person. Consistent with the sentencing procedures at the time, the court made this required finding itself, using a preponderance of the evidence standard.

[¶ 17] After Schofield was sentenced, and while her appeal to this Court was pending, the United States Supreme Court issued its decision in *Blakely,* at that time the latest in a series of Sixth Amendment decisions originating from the Supreme Court's ruling in *Apprendi.* In *Apprendi,* the Court vacated a twelve-year sentence imposed for a firearms violation. *Id.* at 471, 491–92, 120 S.Ct. 2348. Although the crime normally was punishable by a maximum sentence of ten years, the New Jersey court enhanced the sentence pursuant to a statute that allowed for increased incarceration if the crime was committed " 'with a purpose to intimidate . . . because of race, color, gender, handicap, religion, sexual orientation or ethnicity.' " *Id.* at 468–69, 120 S.Ct. 2348 (quoting N.J. Stat. Ann. § 2C:44–3(e) (West Supp. 1999–2000)). The Supreme Court found Apprendi's sentence violated the Sixth Amendment, because "[o]ther than the fact of a prior conviction, any fact that increas-

es the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348.

[¶ 18] In *Blakely,* the United States Supreme Court invalidated a sentence imposed pursuant to Washington State's sentencing scheme. *Blakely,* 542 U.S. at 297–99, 124 S.Ct. at 2534–35. Blakely entered a plea of guilty to one charge of kidnapping involving domestic violence and use of a firearm. *Id.* at 297–99, 124 S.Ct. at 2534–35. Although Washington law authorized a maximum sentence of ten years for the offense, the state's sentencing scheme mandated a maximum sentence of no more than fifty-three months, unless the court determined that specified aggravating factors warranted a longer term. *Id.* at 299–300, 124 S.Ct. at 2535. In Blakely's case, the court convened a sentencing hearing and determined that Blakely had acted with "deliberate cruelty," an aggravating factor that allowed an enhanced sentence. *Id.* at 299–302, 124 S.Ct. at 2535–36. The court sentenced Blakely to ninety months in prison. *Id.* at 299–300, 124 S.Ct. at 2535.

[¶ 19] The Supreme Court vacated the sentence, finding that Washington's sentencing scheme violated the defendant's Sixth Amendment right to a jury trial. *Id.* at 304–06, 124 S.Ct. at 2538. In doing so, the court made clear that the "statutory maximum" sentence for *Apprendi* purposes was the "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 302–04, 124 S.Ct. at 2537 (emphasis in original). Because Washington's sentencing scheme mandated a sentence of not more than fifty-three months based on the facts Blakely admitted to, he had the right to require that any facts allowing an increase in that sentence

be proved beyond a reasonable doubt to a jury. *Id.* at 312–14, 124 S.Ct. at 2543.

[¶ 20] The Supreme Court reaffirmed the basic principle of *Blakely* in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), its most recent Sixth Amendment decision. In *Booker,* the Supreme Court determined that the mandatory nature of the federal sentencing guidelines violated the Sixth Amendment because they required the use of different sentencing ranges for a particular crime based on the facts considered by the judge. *Id.* at 233–34, 125 S.Ct. at 750–51. The Supreme Court reiterated the essential inquiry for Sixth Amendment purposes: whether the sentencing statute *requires a factual finding before an enhanced sentence may be imposed. See id.* at 231–33, 125 S.Ct. at 749. In other words, may the court impose the sentence *without* first making a specified finding of fact? If the answer is yes, then the sentencing scheme is discretionary and does not violate the Sixth Amendment. If the answer is no, then the defendant's right to a jury determination is infringed.

[¶ 21] With respect to Schofield's sentencing, the answer to this critical question is no. As we have already noted, section 1252(2)(A) required a finding that Schofield's crime was "among the most heinous crimes committed against a person" before a sentence exceeding twenty years could be imposed. That fact was not pleaded in Schofield's indictment as an element of the offense of manslaughter, was not admitted by Schofield, and was not determined beyond a reasonable doubt by the fact-finder. For these reasons, section 1252(2)(A) cannot be constitutionally applied without affording the defendant an opportunity to have the fact-finder of her choice, judge or jury, determine whether, beyond a reasonable doubt, the crime was

among the most heinous offenses committed against a person.

[¶ 22] Our dissenting colleagues suggest that the finding of heinousness required by section 1252(2)(A) poses no constitutional problem because it is "not the kind of discrete factual finding[ ] . . . that the Sixth Amendment requires that a jury should make." We disagree. The comparative nature of the inquiry required by section 1252(2)(A) does not alter the requirements of the Sixth Amendment. Juries in other jurisdictions have capably evaluated the heinousness of a particular crime. Moreover, the Supreme Court has specifically held that, in the absence of a knowing waiver, the Constitution requires juries to make these determinations when it results in an enhancement beyond a specified maximum.

[¶ 23] There is an established body of law regarding jury sentencing in this country, much of it created in the wake of the Supreme Court's decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In *Furman,* a fractured Supreme Court ruled that the death penalty was unconstitutional, in part because it was applied arbitrarily. *Id.* at 313, 92 S.Ct. 2726 (White, J., concurring). In response to this decision, twenty-nine states passed statutes requiring juries to determine whether "aggravating factors" warranting execution exist. *See Ring v. Arizona,* 536 U.S. 584, 608 n. 6, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). A number of these states include, as an aggravating factor for the jury to determine, whether the defendant committed the offense in an *"especially* heinous," cruel, atrocious, or depraved matter. *See* CONN. GEN. STAT. ANN. § 53a–46a(i)(4) (West 2001); KAN. STAT. ANN. § 21–4636(f)(7) (2004); LA. CODE CRIM. PROC. ANN. art. 905.4(A)(7) (West 1997); MISS. CODE ANN. § 99–19–101(5)(h) (2000); N.C. GEN. STAT. § 15A–2000(e)(9)

(2003); UTAH CODE ANN. § 76-5-202(1)(p) (2003).

[¶ 24] There is no analytical distinction between determining whether a crime is "especially" heinous and determining whether a crime is "among the most heinous." [6] Both require the decision-maker to compare the offender's crime on some kind of scale. The states listed above have entrusted this decision to juries, and their juries have proved capable of determining when an offense is appreciably more heinous than the typical crime.

[¶ 25] If the practice in a number of other jurisdictions does not sufficiently establish that the Legislature would have recognized that jurors are capable of evaluating the heinousness of a crime, it is worth noting that the Supreme Court required the practice in *Ring*. In *Ring*, the Supreme Court held that a jury must determine aggravating factors in capital cases. *Id.* at 609, 122 S.Ct. 2428. The defendant in *Ring* was sentenced pursuant to ARIZ. REV. STAT. ANN. § 13-703(G) (West Supp.2001), which included as an aggravating factor whether " '[t]he defendant committed the offense in an especially heinous, cruel or depraved manner.' " *Ring*, 536 U.S. at 592-93 n. 1, 122 S.Ct. 2428. The statute required judges, not juries, to determine the existence of an aggravating factor. *Id.* at 592, 122 S.Ct. 2428. Among the arguments put forth by Arizona in defending the sentence was that judges were better able to evaluate a particular crime in comparison to others. *Id.* at 607, 122 S.Ct. 2428. The Supreme Court rejected this claim, because "[t]he Sixth

Amendment jury trial right ... does not turn on the relative rationality, fairness, or efficiency of potential factfinders." *Id.* The Court noted that "the great majority of States responded to this Court's Eighth Amendment decisions requiring the presence of aggravating circumstances in capital cases by entrusting those determinations to a jury." [7] *Id.* at 607-08, 122 S.Ct. 2428.

[¶ 26] Finally, in states where the determination of the heinousness of a non-capital crime was made by a judge prior to *Blakely*, courts have recognized that the Sixth Amendment allows defendants to require those findings be proved beyond a reasonable doubt to a jury. For example, Ohio's sentencing statute allows maximum sentences for "offenders who committed the worst forms of the offense." OHIO REV. CODE ANN. § 2929.14(C) (West 2005). In *State v. Murrin*, 2004 Ohio 6301, 2004 WL 2677454 (Ct.App.2004), *app. granted*, 105 Ohio St.3d 1515, 826 N.E.2d 314 (2005), the Ohio Court of Appeals vacated a sentence imposed under this statute, because it was based upon "judicial factual findings on the record that were neither determined by a jury nor stipulated to by the defendant." *Id.* ¶ 26. *But see State v. Lett*, 2005 Ohio 2665, ¶¶ 23-32, 161 Ohio App.3d 274, 829 N.E.2d 1281 (2005) (holding that the subjective determination of whether a crime is the worst form of the offense is properly left to a judge's discretion). *See also State v. Harris*, 166 N.C.App. 386, 602 S.E.2d 697, 702 (2004) (determining that *Blakely* prohibited the imposition of an enhanced sentence upon a judicial finding that an offense was " 'especially heinous, atrocious

---

6. Nor is there any reason to believe that requiring a jury determination of heinousness is different than requiring a jury to determine that an assault is "of a high and aggravated nature." *See State v. Wheeler*, 252 A.2d 455, 456 (Me.1969).

7. In the wake of the *Ring* decision, several states amended their capital punishment statutes to require juries to make decisions about the relative heinousness of a crime. *See, e.g.*, IDAHO CODE §§ 18-4004, 4505(6)(d) (2005); NEB. REV. STAT. §§ 29-2520, -2523(1)(d) (Supp. 2004).

or cruel'"); *State v. Natale*, 373 N.J.Super. 226, 861 A.2d 148, 150–54 (App.Div. 2004) (determining that a statute allowing an enhanced sentence upon a judge's finding that an offense was "committed in an especially heinous, cruel, or depraved manner" was unconstitutional in light of *Blakely*), *cert. granted*, 182 N.J. 425, 866 A.2d 981 (2005); *Krebs v. State*, 816 N.E.2d 469, 475–76 (Ind.Ct.App.2004) (remanding for re-sentencing because trial court unconstitutionally enhanced offender's sentence based on a judicial determination that the crime was "'particular[ly] heinous'").

[¶ 27] The willingness of other jurisdictions to place evaluative determinations in the hands of jurors, and the Supreme Court's approval of this practice in *Ring*, indicates that a jury can be trusted to determine if a particular crime is among the most heinous offenses committed against a person. Although requiring a jury to determine that fact may be less efficient than the Legislature conceived, tradition and judicial efficiency do not trump the Sixth Amendment. "The founders of the American Republic were not prepared to leave [criminal justice] to the State, which is why the jury-trial guarantee was one of the least controversial provisions of the Bill of Rights. It has never been efficient; but it has always been free." *Apprendi*, 530 U.S. at 498, 120 S.Ct. 2348 (Scalia, J., concurring).

C. Obvious Error

[¶ 28] The State also argues that because Schofield failed to raise any Sixth Amendment objections at her sentencing, our review is limited to obvious error. Generally, if a party fails to raise an objection in the trial court, this Court will review the record only for "obvious errors." *State v. Burdick*, 2001 ME 143, ¶ 13, 782 A.2d 319, 324. This Court will vacate a sentence based on obvious error "'if the error affects "substantial rights" or results in a substantial injustice.'" *Id.* ¶ 29, 782 A.2d at 328 (quoting *In re Joshua B.*, 2001 ME 115, ¶ 10, 776 A.2d 1240, 1243). When the alleged violation is of a constitutional dimension, we will affirm only if we are convinced beyond a reasonable doubt that the error did not affect the defendant's substantive rights. *Burdick*, 2001 ME 143, ¶ 29, 782 A.2d at 328.

[¶ 29] The jurisdictions that have considered appeals of pre-*Blakely* sentencings are not in agreement on the proper standard of review to apply. Most courts faced with an unpreserved *Blakely* or *Booker* challenge to sentencing have applied obvious or plain error. *See United States v. Hughes*, 401 F.3d 540, 547 (4th Cir.2005), *reh'g denied*, 2005 U.S.App. Lexis 5834 (4th Cir. April 8, 2005); *United States v. Antonakopoulos*, 399 F.3d 68, 75 (1st Cir.2005); *United States v. Crosby*, 397 F.3d 103, 119 (2d Cir.2005); *State v. Gomez*, No. M2002–01209–SC–R11–CD, 2005 WL 1616186, 2005 Tenn. Lexis 350, at *46 (Tenn. April 15, 2005), *reh'g denied*, 2005 Tenn. Lexis 473 (Tenn. May 18, 2005).

[¶ 30] Several decades ago we faced an issue similar to the one at bar. In *State v. Wheeler*, 252 A.2d 455 (Me.1969), we had to determine whether the criminal defendant was entitled to raise the deprivation of his right to a jury trial on appeal when he had not raised it in the trial court. *Id.* at 458–59. After Wheeler's jury trial for assault, but while his appeal was pending, we decided *State v. Ferris*, 249 A.2d 523 (Me.1969), in which we struck down as unconstitutional the procedure that allowed a defendant who had been convicted of misdemeanor assault to be sentenced as a felon if the court made a finding that the assault was "of a high and aggravated nature." *Id.* at 528. We vacated Wheeler's conviction because he had been de-

prived of his right to a jury trial on the high and aggravated nature of the crime. *Wheeler*, 252 A.2d at 459. We held that although *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), upon which *Ferris* was premised, had been decided prior to Wheeler's trial, it likely had not come to the attention of the presiding judge or Wheeler's trial counsel, and therefore, Wheeler could not have waived his right to a jury trial on the "high and aggravated" factor. *Wheeler*, 252 A.2d at 459. We did not refer to the error in that case as plain, obvious, or structural, but we cited several cases in support of the proposition that when the error was "so highly prejudicial and so taint[ed] the proceeding as virtually to deprive the aggrieved party of a fair trial," the. error could be raised for the first time on appeal. *Id.* at 458. We said that because

> Wheeler's conviction was the product of a type of procedure foreign to due process and governmental fair play with probability of resulting injustice to be frowned upon by a good and just order of criminal jurisprudence, the ends of justice demand that we grant appellate relief and set aside the conviction below.

*Id.* at 459 (citation omitted).[8]

[¶ 31] We also vacated the conviction in *Ferris*, in which there is no discussion of preservation of error, apparently because Ferris was tried before the *Duncan* decision, whereas the court in *Wheeler* appears to have considered the preservation issue because Wheeler's trial was after *Duncan*. It does not appear that Ferris raised the jury issue in the trial court. Ferris had been charged with manslaughter, but the jury convicted him of assault. *Ferris*, 249 A.2d at 524. Based upon the evidence at trial, the presiding judge found that the

assault was "of a high and aggravated nature" and sentenced Ferris accordingly. *Id.* The testimony at trial was that the defendant struck the victim in the face several times. *Id.* Several days later, the victim, who was bruised on his face, neck, and chest, was diagnosed with a blood clot in his head, and he died thereafter. *Id.* at 524–25.

■ [¶ 32] *Ferris* and *Wheeler* stand for the proposition that when a criminal defendant has been deprived of a right to have a jury determine facts that enhance or raise the sentencing range available to the court, and the procedure clarifying that right is recently announced or clarified, we will recognize the error even if not raised in the trial court.

[¶ 33] More recently, we held that a violation of the jury determination required by *Apprendi*, was *not* structural error requiring reversal. *Burdick*, 2001 ME 143, ¶ 28, 782 A.2d at 328. In *Burdick*, we considered the appeal of a defendant convicted of attempted murder after he fired two gunshots into the chest of a police officer. *Id.* ¶ 2, 782 A.2d at 321. At his sentencing, the trial judge imposed a lengthy sentence consistent with the provisions of 17–A M.R.S.A. § 152(4)(F) (Supp. 2000), which authorized up to a life sentence for an attempted murder committed against a law enforcement officer. *Burdick*, 2001 ME 143, 782 A.2d at 322–23. Because the status of the victim as a law enforcement officer was not determined by a jury, we determined that the sentence violated the principles of *Apprendi*. *Id.* ¶¶ 9, 25, 782 A.2d at 322–23, 327. However, we decided that the error was harmless because there was abundant and undisputed evidence the victim of the crime was " 'a

---

**8.** The analysis in *Wheeler* is similar to that of the Indiana Supreme Court in *Smylie v. State*, 823 N.E.2d 679, 690 (Ind.2005).

law enforcement officer ... acting in the performance of that officer's duties.' " *Id.* ¶¶ 31–32, 782 A.2d at 328–29 (quoting 17–A M.R.S.A. § 152(4)(F)), and because the jury did determine that the victim was a law enforcement officer as an element of another crime on which it found the defendant guilty. *Id.* ¶ 33, 782 A.2d at 329.

[¶ 34] In *State v. Hodgkins,* 2003 ME 57, ¶ 11, 822 A.2d 1187, 1192–93, we found that an *Apprendi* violation was obvious error. In *Hodgkins,* we vacated a sentence imposing two years of probation because the defendant's conviction for assault related to domestic violence. *Id.* We noted that the altercation's domestic nature was not proved beyond a reasonable doubt. *Id.* In our unanimous opinion, the denial of the defendant's Sixth Amendment right to a determination beyond a reasonable doubt "represented an 'obvious error' affecting substantial rights." *Id.*

[¶ 35] The impairment of Schofield's rights at her sentencing is no less substantial than that of the defendant in *Hodgkins.* Both defendants were denied the right to have a significant fact determined beyond a reasonable doubt. Unlike the situation in *Burdick,* we cannot determine from this record, beyond a reasonable doubt, whether a jury would have determined that Schofield's crime was among the most heinous crimes committed against a person. Therefore we must conclude that the sentencing process constituted obvious error affecting her substantial rights.

[¶ 36] Because we find that the imposition of a sentence exceeding twenty years was based upon a judge's determination that the crime was heinous, and that this sentencing constitutes obvious error, we

vacate Schofield's sentence. We next explore the procedures by which Schofield may be resentenced in the Superior Court.

### III. REMEDY

[¶ 37] We have concluded that Schofield, when she waived her jury trial on the merits, did not waive her then unknown jury trial right with respect to sentencing facts. There is presently no procedure for empaneling a jury to decide sentencing facts.

[¶ 38] Although state law does not specifically provide for a jury trial on sentencing facts, our recognition of such a procedure is well within our inherent judicial power to "safeguard and protect within the borders of this State the fundamental principles of government vouchsafed to us by the State and Federal Constitutions." *Morris v. Goss,* 147 Me. 89, 106, 83 A.2d 556, 565 (1951). When, in the past, we have concluded that a jury trial was required by the Maine Constitution and the Legislature had not provided for one, we adjusted the procedures to allow for a jury trial. *See N. Sch. Congregate Hous. v. Merrithew,* 558 A.2d 1189, 1196–97 (Me. 1989) (title dispute in a forcible entry and detainer action); *Ela v. Pelletier,* 495 A.2d 1225, 1228–29 (Me.1985) (small claims proceeding). Finally, in our capacity as the Supreme Judicial Court, the Legislature has required us to review criminal sentences including the "manner in which the sentence was imposed." 15 M.R.S.A. § 2155 (2003).[9]

[¶ 39] In the other states where courts that have struck down part of their sentencing schemes in light of *Blakely,* there is disagreement as to the proper remedy.

---

9. Also, in our capacity as the Supreme Judicial Court, the Legislature has granted us the "power and authority to prescribe, repeal, add to, amend or modify rules of pleading, practice and procedure with respect to any and all proceedings through final judgment, review and post-conviction remedy in criminal cases[.]" 4 M.R.S.A. § 9 (1989).

Two courts have rejected the argument that they may impose a system of jury sentencing. *See State v. Hughes,* 154 Wash.2d 118, 110 P.3d 192, 208–09 (2005); *State ex rel. Mason v. Griffin,* 104 Ohio St.3d 279, 819 N.E.2d 644, 647 (2004). Other courts, however, have either explicitly or implicitly approved of the empaneling of juries to determine facts necessary for enhanced sentences. *See Lopez v. People,* No. 04SC150, 113 P.3d 713, at 716, 2005 Colo. Lexis 504, at *6 (Colo. May 23, 2005); *Smylie v. State,* 823 N.E.2d 679, 685–86 (Ind.2005); *Aragon v. Wilkinson,* 209 Ariz. 61, 97 P.3d 886, 891 (2004). We agree with these courts that permitting jury sentencing, pursuant to the powers described above, best preserves the Legislature's intent to provide greater punishment for those who commit the most heinous offenses.

[¶ 40] On remand, Schofield may be sentenced constitutionally within the zero- to twenty-year range without the need for further fact-finding regarding heinousness. If the State recommends a sentence in the upper range, or if the court is inclined to impose such a sentence even in the absence of a recommendation, Schofield must be provided with the opportunity for a sentencing trial before the fact-finder of her choice (i.e., judge or jury). If she selects a jury, at the beginning of the proceeding, the trial judge should instruct the jury as follows:

> You are being asked to make a decision today that will assist me in sentencing Ms. Schofield who has been convicted of the Class A offense of manslaughter.
>
> Under certain circumstances a judge may sentence a person convicted of a Class A crime to a sentence in excess of twenty years. One of those circumstances is when the offense that was committed by the person is "among the most heinous crimes committed against a person."

The parties will provide information and testimony from which you can evaluate the offense committed by Ms. Schofield and determine whether it is among the most heinous committed against a person.

[¶ 41] After informing the jury, as above, and after evidence, information and argument are presented to the jury, the jury should be instructed to answer the following question unanimously:

> Do you find beyond a reasonable doubt that the offense committed by Ms. Schofield is among the most heinous offenses committed against a person?

The court will then use the jury's determination on that fact to inform the re-sentencing, but will not have the authority to impose a sentence beyond twenty years unless the jury answers yes.

The entry is:

Sentence vacated. Remanded to the Superior Court for proceedings consistent with this opinion.

CLIFFORD, J., with whom RUDMAN, and ALEXANDER, JJ., join, dissenting.

[¶ 42] I respectfully dissent. In my view the discretionary determinations made by our sentencing judges that can result in a sentence in excess of twenty years for a Class A offense do not implicate *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); or *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). I would conclude that the sentence of Sally A. Schofield does not violate the Sixth Amendment to the United States Constitution.

[¶ 43] We have long held that facts incident to a crime that may enhance a penal-

ty for that crime above the standard sentence must be pleaded and proved by the State beyond a reasonable doubt. *See State v. Briggs*, 2003 ME 137, ¶ 5, 837 A.2d 113, 116 (holding that a two-year period of probation could not be imposed in the absence of pleading and proof that crime involved domestic assault); *see also State v. Hodgkins*, 2003 ME 57, ¶¶ 9–11, 822 A.2d 1187, 1191–93; *State v. Burdick*, 2001 ME 143, ¶ 20, 782 A.2d 319, 325–26 (holding that status of the victim as a law enforcement officer must be pleaded and proved beyond a reasonable doubt to jury for enhanced penalty provision of statute to apply); *State v. Wheeler*, 252 A.2d 455, 456 (Me.1969); *State v. Ferris*, 249 A.2d 523, 528 (Me.1969) (holding that sentencing a defendant for felony aggravated assault following conviction by jury of misdemeanor assault violated defendant's right to jury trial).

[¶ 44] The sentence enhancing factors found by the sentencing court in *Apprendi*, 530 U.S. at 468–69, 120 S.Ct. 2348 (finding that the crime was a hate crime, meaning that it was committed " 'with a purpose to intimidate ... because of race, color, gender, handicap, religion, sexual orientation, or ethnicity' "), and by the sentencing court in *Blakely*, 542 U.S. at 302–04, 124 S.Ct. at 2537 (finding that the act was committed with " 'deliberate cruelty' "), are discrete objective factual findings. *See State v. Lett*, 2005 Ohio 2665, ¶ 21, 161 Ohio App.3d 274, 829 N.E.2d 1281 (2005) (observing that objective findings such as those found in *Blakely* and *Booker* could easily have been charged as elements of the offense and are readily amenable to disposition at trial). If such findings were the kind that our statute required to be made to justify a sentence for Schofield in excess of twenty years, I would agree with the Court that those findings would have to be made beyond a reasonable doubt. Indeed, in my view our existing jurisprudence would require that they be pleaded and proved beyond a reasonable doubt.

[¶ 45] The Supreme Court's most recent decision on this issue offers little clarity as to the issue raised by the sentence of Schofield. In *Booker*, the Court concluded that the federal sentencing guidelines violate the Sixth Amendment to the United States Constitution because those guidelines applicable to the federal indeterminate sentencing scheme are mandatory and require the sentencing court to impose higher sentences based on findings of fact made by a judge, and not a jury. 543 U.S. at 233–34, 125 S.Ct. at 750–51. Maine has determinate sentencing and does not have such sentencing guidelines.

[¶ 46] At the time of Schofield's sentence, our law provided that the maximum penalty for conviction of a Class A crime was forty years. 17-A M.R.S.A. § 1252(2)(A) (Supp.2001). Pursuant to that section, in order to sentence a Class A offender to more than twenty years, the sentencing court must consider the nature and seriousness of the crime either alone or coupled with the serious criminal history of the defendant—factors that have historically and appropriately been for the sentencing judge to take into account—and to determine whether those factors justify a sentence exceeding twenty years. 17-A M.R.S.A. § 1252(2)(A).

[¶ 47] Although section 1252(2)(A) clearly provides for forty-year sentences for conviction for Class A crimes, the Court concludes that within the meaning of *Blakely*, twenty years is, without any additional findings, the default statutory maximum that a court may impose. In my view, it is unnecessary to decide whether the twenty-year sentence is a default statutory maximum for purposes of *Apprendi* and *Blakely*.

[¶ 48] Pursuant to 17–A M.R.S.A. § 1252(2)(A), the considerations undertaken by our sentencing courts in imposing a sentence in excess of twenty years for a Class A offense are not the kind of discrete factual findings that were made in *Apprendi* and *Blakely* to justify an enhanced sentence, and that the Sixth Amendment requires that a jury should make. A defendant's criminal history is not an appropriate area of scrutiny for a jury to undertake. Moreover, when the court assesses the nature and seriousness of Schofield's crime, and determines whether it is among the most heinous and violent crimes that can be committed against a person, the court is undertaking an evaluative analysis comparing Schofield's crime with the ways that other criminal acts can be committed. Such a subjective review of sentencing factors and circumstances has traditionally been left to judges. These evaluative considerations are very different from the kind of discrete findings of fact that juries have traditionally made, like the specific facts that were required to be found in *Blakely* and *Apprendi* before an enhanced sentence could be imposed.

[¶ 49] Although the Court correctly notes that death penalty sentencing criteria include heinousness as a factor that has been considered by juries, most of the determining factors that must be considered in such cases are more traditional discrete findings of fact appropriate for juries to make.[10] This is not so under section 1252(2)(A), pursuant to which only criminal history and comparative heinousness are to be considered. These determinations have always been, and should continue to be, appropriate for judges and not for juries to make.[11]

[¶ 50] The rule enunciated in *Blakely* is not intended to infringe on judicial fact-finding traditionally employed in the exercise of judicial discretion in imposing a sentence. In *Apprendi*, for example, the sentence was enhanced because the court made a discrete factual finding that the crime was racially motivated, a finding incident to the crime. 530 U.S. at 471, 120 S.Ct. 2348. Similarly, in *Blakely*, the court found that the defendant acted with " 'deliberate cruelty,' " *Blakely*, 542 U.S. at 302–04, 124 S.Ct. at 2537, a discrete factual determination that can be, and has been, traditionally considered by a jury. Thus, what is protected is the jury's function to find facts incident to the crime that may affect the penalty imposed. *Id.* at 325–27, 124 S.Ct. at 2540.

[¶ 51] As noted above, facts incident to a crime that may enhance a penalty for that

---

**10.** When assessing whether to impose the death penalty, juries consider a variety of factors, such as whether a murder was committed by a convict under sentence of imprisonment, whether the defendant was previously convicted of another murder or felony, whether the murder was committed at the same time as the defendant committed another murder, whether the defendant created a great risk of death to many people, whether the murder was committed during the commission of a felony, whether the murder was committed to avoid lawful arrest, and whether the murder was committed for pecuniary gain. *See* Model Penal Code § 210.6(3) (1962); *see also* Conn. Gen. Stat. § 53a–46a(i) (West 2001); La. Code Crim. Proc. Ann. art.

905.4(A) (West 1997); Miss. Code Ann. § 99–19–101 (2000).

**11.** Because the criteria set out in 17–A M.R.S.A. § 1252(2)(A) (Supp.2001) have been selected by our Legislature to be determined by a sentencing judge, we should be particularly reluctant to turn over such determinations to a jury without an amendment of the legislation creating the criteria. *See State v. Hughes*, 154 Wash.2d 118, 110 P.3d 192, 209 (2005) (holding that to create a means for the jury, on remand, to decide aggravating sentencing factors "out of whole cloth would be to usurp the power of the legislature").

crime, should be and, pursuant to our existing jurisprudence, must be, pleaded and proved by the state beyond a reasonable doubt. *See Briggs*, 2003 ME 137, ¶ 5, 837 A.2d at 116. In the present case, however, the determinations made by the court involved comparative evaluations always undertaken by the judge in sentencing, determinations that would be difficult, impractical, and improper for a jury to undertake.

[¶ 52] Because the determination of the seriousness and the heinousness of the crime in comparison to all the ways that the crime can be committed have always been, and should continue to be, for a judge and not for a jury to assess, I would conclude that the provisions of section 1252(2)(A) do not violate the Sixth Amendment, and that *Apprendi; Blakely*, and *Booker* do not operate to mandate that Schofield's sentence be vacated. I would not remand for resentencing, but would address the propriety of Schofield's sentence pursuant to our current sentencing jurisprudence.

ORDER OF RECONSIDERATION

PER CURIAM.

The State's Motion for Reconsideration is granted insofar as it requests reconsideration of the language in *State v. Schofield*, 2005 ME 82, ¶ 40, 895 A.2d 927, 938, relied on in *State v. Averill*, 2005 ME 83, ¶ 10, 887 A.2d 519, 522. All other portions of the State's Motion for Reconsideration were previously denied by Order dated August 16, 2005.

Upon reconsideration, the Court amends paragraph 40 of *Schofield* opinion to reads as follows:

[¶ 40] On remand, Schofield may be sentenced constitutionally within the zero- to twenty-year range without the need for further fact-finding regarding heinousness. If the State recommends a sentence in the upper range, or if the court is inclined to impose such a sentence even in the absence of a recommendation, Schofield must be provided with the opportunity for a sentencing trial before the fact-finder of her choice (i.e., judge or jury). If she selects a jury, at the beginning of the proceeding, the trial judge should instruct the jury as follows:

You are being asked to make a decision today that will assist me in sentencing Ms. Schofield who has been convicted of the Class A offense of manslaughter.

In imposing sentences, judges are required to look at a number of circumstances concerning the defendant, the victim, and the commission of the crime. One of the circumstances that a jury is required to determine is whether the offense committed by the defendant is among the most heinous crimes committed against a person.

The parties will provide information and testimony from which you can evaluate the offense committed by Ms. Schofield and determine whether it is among the most heinous committed against a person.

ALEXANDER, J., statement of noncurrence.

Because I do not believe that the original sentencing was affected by any error of law or that any jury trial is required for sentencing, I do not join this amendment order.