2002 ME 117

**Anthony J. CASELLA**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued: April 4, 2002.
Decided: July 26, 2002.

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Attorney General, Leaqnne Robbin, Asst. Attorney General, Augusta, for State.

Panel: CLIFFORD, RUDMAN, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Anthony J. Casella appeals from the judgment entered in the Superior Court (Androscoggin County, *Gorman, J.*) denying his petition for post-conviction review. Casella argues that his Fourteenth Amendment Due Process rights were violated when, during his trial for theft pursuant to one scheme or course of conduct, the Superior Court failed to require the jury to unanimously agree as to which specific instances comprised his criminal course of conduct. He contends that the decision of the United States Supreme Court in *Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), created a new constitutional right that a defendant, who is charged under a course of conduct statute, is entitled to have the jury unanimously find beyond a reasonable doubt which predicate crimes he committed. Casella also contends that this right is retroactively applicable on collateral review. Because we disagree that the *Richardson* decision created a new constitutional right, we affirm the judgment of the Superior Court.

## I. STATEMENT OF THE CASE

[¶ 2] In December of 1995, Casella was indicted on two counts of theft by unauthorized taking, 17–A M.R.S.A. § 353 (1983).[1] Count I charged Casella with theft of an aggregated sum of more than $5000 from one Kari Parker. Count II charged him

---

Mary Davis, Stuart Tisdale, Esq., Tisdale & Davis, P.A., Portland, for plaintiff.

---

1. At the time of Casella's trial, the theft of property or services valuing more than $5000 was a Class B crime. 17–A M.R.S.A. § 362 (1983).

with theft pursuant to one scheme or course of conduct of an aggregated sum of more than $5000 resulting from nineteen transactions with nineteen different individuals. The State aggregated these amounts pursuant to 17–A M.R.S.A. § 352(5)(E).[2]

[¶ 3] The case was tried before a jury in the Superior Court (Androscoggin County, *Delahanty, J.*). At the close of the evidence, Casella requested the court to instruct the jury that in order to find him guilty on Count II, it must unanimously agree as to which of the nineteen transactions constituted thefts. The court denied this request and simply charged the jury that "any verdict that you reach in this case, no matter what it is, on each of the counts must be unanimous." The jury convicted Casella of both counts and the court sentenced him to fourteen years in prison with all but twelve years suspended and four years of probation.

[¶ 4] Following the entry of this judgment, Casella appealed to us and argued, *inter alia*, that the court erred by not giving the unanimity instruction that he had requested. We concluded that there was no error in the court's instruction, and we affirmed the judgment in a memorandum of decision. *State v. Casella*, No. 98–39, (Me. Feb. 14, 1998) (mem.).

[¶ 5] On June 1, 1999, the United States Supreme Court held in *Richardson v. United States*, that, in cases brought under the federal continuing criminal enterprise (CCE) statute, a federal jury must unanimously agree as to the specific violations that the defendant committed that constitutes the continuing series. *Richardson*, 526 U.S. at 815, 119 S.Ct. 1707. Based upon the *Richardson* decision, Casella filed a petition for post-conviction review in which he argued that his Fourteenth Amendment Due Process rights were violated when the trial court failed to give the unanimity instruction. Although the Superior Court denied the petition, we issued a certificate of probable cause.

## II. DISCUSSION

### A. *Richardson v. United States*

[¶ 6] In *Richardson*, Eddie Richardson had been charged with violating the federal drug statute that makes it a specific crime to "engage[ ] in a continuing criminal enterprise." 21 U.S.C. § 848(a) (1999). The statute defines a continuing criminal enterprise as a " 'violat[ion]' of the drug statutes where 'such violation is a part of a continuing series of violations.' " *Richardson*, 526 U.S. at 815, 119 S.Ct. 1707 (quoting 21 U.S.C. § 848(c)). At the conclusion of his trial, Richardson requested that the judge instruct the jury that it must "unanimously agree on which three acts constituted [the] series of violations." *Richardson*, 526 U.S. at 816, 119 S.Ct. 1707. The trial court denied this request and instructed the jury that it "must unanimously agree that the defendant committed at least three federal narcotics offenses," and it added that "[y]ou do not ... have to

---

2. Maine's theft aggregation statute at the time of Casella's conviction read:

 Amounts of value involved in thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be aggregated to charge a single theft of appropriate class or grade. Subject to the requirement that the conduct of the defense may not be prejudiced by lack of fair notice or by surprise,

the court may at any time order that a single aggregated count be considered as separate thefts. No aggregated count of theft shall be deemed duplicitous because of such an order and no election shall be required. Prosecution may be brought in any venue in which one of the thefts which have been aggregated was committed.

 17–A M.R.S.A. § 352(5)(E) (1983).

agree as to the particular three or more federal narcotics offenses committed by the defendant." *Id.* Richardson was convicted of the charge and the Seventh Circuit affirmed. *Id.* The United States Supreme Court granted certiorari. *Id.*

[¶ 7] The issue before the Court was "whether a jury has to agree unanimously about which specific violations make up the 'continuing series of violations.'" *Id.* at 815, 119 S.Ct. 1707. The Court specifically held that "a jury in a federal criminal case brought under § 848 must unanimously agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed each of the individual 'violations' necessary to make up that 'continuing series.'" *Id.* It acknowledged that a federal jury does not have to agree as to the means in which a defendant commits an element of a crime as long as the jury unanimously finds that the defendant committed that element. *Id.* at 817, 119 S.Ct. 1707. The Court determined, however, that each specific underlying violation constituted a particular element and, therefore, juror unanimity was required. *Id.* at 816, 119 S.Ct. 1707. The Court reached this conclusion after examining the language and breadth of the federal CCE statute, as well as the history and tradition of the criminal law. *Id.* at 818–20, 119 S.Ct. 1707.

[¶ 8] The Court first decided that the term "violation," as used in the CCE statute, denotes "not simply an act or conduct; it is an act or conduct that is contrary to law." *Id.* at 818, 119 S.Ct. 1707. It further stated: "To hold that each 'violation' here amounts to a separate element is consistent with a tradition of requiring juror unanimity where the issue is whether a defendant has engaged in conduct that violates the law." *Id.* at 818–19, 119 S.Ct. 1707.

[¶ 9] The Court next examined the breadth of the statute and considered the potential for unfairness. It noted that the statute used the term "violations" in order to encompass many different criminal acts with varying degrees of seriousness. *Id.* at 819, 119 S.Ct. 1707. The Court explained that this breadth "also argues against treating each individual violation as a means, for that breadth aggravates the dangers of unfairness that doing so would risk." *Id.*

[¶ 10] Lastly, the Court considered the constitutional tradition of requiring jury unanimity in criminal cases:

> [T]he Constitution itself limits a State's power to define crimes in ways that would permit juries to convict while disagreeing about means, at least where that definition risks serious unfairness and lacks support in history or tradition .... We have no reason to believe that Congress intended to come close to, or to test, those constitutional limits when it wrote this statute.

*Id.* at 820, 119 S.Ct. 1707 (citations omitted). The Court decided that the "considerations [of language, potential unfairness, and tradition], taken together, lead us to conclude that the statute requires jury unanimity in respect to each individual 'violation.'" *Id.* at 824, 119 S.Ct. 1707.

B. 15 M.R.S.A. § 2128(5) (Supp.. 2001)

[¶ 11] Before we reach Casella's Due Process arguments, however, we must first determine whether his petition was timely. In Maine, all petitions for post-conviction review must meet a one-year statute of limitations. 15 M.R.S.A. § 2128(5). This period begins to run from the latest of the following:

> A. The date of final disposition of the direct appeal from the underlying criminal judgment or the expiration of the time for seeking the appeal;

B.  The date on which the constitutional right, state or federal, asserted was initially recognized by the Law Court or the Supreme Court of the United States, if the right has been newly recognized by that highest court and made retroactively applicable to cases on collateral review; or

C.  The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* at 2128(5)(A)(C).  Casella concedes that in order for his petition to be timely, he must satisfy subsection B. To this end, he asserts that the *Richardson* decision created a new constitutional right that is retroactively applicable to his case on collateral review.

 [¶ 12]  According to Justice O'Connor's concurring opinion in *Teague v. Lane,* 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or Federal Government."  We conclude, however, that the *Richardson* decision applied previously existing constitutional principles concerning the government's burden of proving every element of the crime charged, federal jury unanimity, and Due Process considerations to one federal statute.  This is evident from the Court's focus on the federal CCE statute's specific language and breadth.  *Richardson,* 526 U.S. at 817–19, 119 S.Ct. 1707.  Although *Richardson* provides a method of analysis that courts are to use when determining the elements of course of conduct statutes, it does not attempt to delineate the elements of all such statutes.  *See United States v. Verrecchia,* 196 F.3d 294 (1st Cir.1999). The decision does not espouse a blanket requirement that all juries, federal and state, deliberating upon these statutes, unanimously agree as to the specific un-

derlying conduct that constitutes its ultimate verdict.  To the contrary, whether a course of conduct statute requires unanimity depends upon the particulars of that statute and, therefore, *Richardson* cannot be said to have created a new constitutional right.  *United States v. Lopez,* 248 F.3d 427, 430 (5th Cir.2001) (finding that *Richardson* created a new statutory right as opposed to a constitutional right).

[¶ 13]  Because the *Richardson* decision does not create a new constitutional right, as required by section 2128(5), Casella's petition is time-barred.  We need not address Casella's Due Process contentions.

The entry is:

Judgment affirmed.