2007 ME 86

**Stephen CARMICHAEL**

v.

**STATE of Maine**

and

**Everett M. Ashby**

v.

**State of Maine.**

Supreme Judicial Court of Maine.

Argued: May 22, 2007.
Decided: July 12, 2007.

---

Sarah L. Glynn, Esq. (orally), Daniel J. Eichorn, Esq., Oxford Hills Law, South Paris, for petitioners.

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Atty. Gen. (orally), Augusta, for State.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, SILVER, and MEAD, JJ.

SILVER, J.

[¶ 1] In this consolidated appeal, Stephen Carmichael and Everett M. Ashby contend that the Superior Court (Somerset and Cumberland Counties, *Mills, J.* and *Wheeler, J.*) erred in dismissing their petitions for post-conviction review. Based upon the United States Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and our decision in *State v. Schofield,* 2005 ME 82, 895 A.2d 927, the petitioners claim that their sentences violate the Sixth Amendment. The petitioners contend that *Blakely* and *Schofield* newly recognized constitutional rights that retroactively apply to cases on collateral review. Thus, the petitioners contend that their petitions are not time-barred. We determine that neither *Blakely* nor *Schofield* applies retroactively and affirm the Superior Court's dismissal of Carmichael's and Ashby's petitions for post-conviction review.

## I. BACKGROUND

### A. *Carmichael v. State*

[¶ 2] On July 21, 1999, Stephen Carmichael was convicted of one count of gross sexual assault (Class A), 17–A M.R.S.A. § 253 (Supp.1998), for conduct that occurred on May 31, 1998. The court determined that Carmichael met the requirements for a sentence exceeding twenty years, and sentenced him to thirty-five years in prison, none of which was suspended.[1] Carmichael appealed the decision to us and we affirmed the conviction in a memorandum of decision in June 2000.

[¶ 3] Days after our decision, the United States Supreme Court decided *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Although Carmichael could have, he did not file a writ of certiorari to the United States Supreme Court seeking review of our decision in light of *Apprendi.*

[¶ 4] In September 2000, Carmichael filed his first post-conviction petition. In July 2003, the Superior Court denied the petition. In May 2004, we denied his motion for a certificate of probable cause to review the denial of his petition. A month after the United States Supreme Court decided *Blakely,* Carmichael filed a petition for a writ of habeas corpus in the federal District Court. In August 2004, Carmichael filed his second post-conviction petition in the Superior Court. Conse-

---

1. Although the record before us is unclear, it appears that the court sentenced Carmichael pursuant to 17–A M.R.S.A. § 1252(2)(A) (Supp.1998), which codified P.L.1995, ch. 473, § 1 (effective Sept. 29, 1995). That session law:

> authorized the court to consider a serious criminal history of the defendant and impose a maximum period of incarceration in excess of 20 years based on either the nature and seriousness of the crime alone or

on the nature and seriousness of the crime, coupled with the serious criminal history of the defendant.

17–A M.R.S.A. § 1252 (2006), historical and statutory notes regarding P.L.1995, ch. 473, § 1. That subsection has been amended to eliminate this two-tiered sentencing approach. *See* P.L.2003, ch. 657, § 10 (effective July 30, 2004) (codified at 12 M.R.S. § 1252(2)(A) (2006)).

quently, the United States District Court for the District of Maine (*Woodcock, J.*) stayed the habeas corpus proceedings until the resolution of the state petition.

[¶ 5] In May 2005, the Superior Court (Somerset County, *Mills, J.*) dismissed Carmichael's second post-conviction petition. The court reasoned that the rule in *Blakely* does not apply retroactively to cases on collateral appeal, and therefore the appeal was untimely. Carmichael then filed a motion to reconsider, which the court denied.

[¶ 6] This request for a certificate of probable cause followed. On April 3, 2006, we issued a consolidated order granting certificates of probable cause in *Carmichael v. State* and *Ashby v. State*. In June 2006, the State moved to stay Carmichael's and Ashby's cases after the United States Supreme Court granted certiorari in *Burton v. Waddington*, 142 Fed.Appx. 297 (9th Cir.2005), *cert. granted,* —— U.S. ——, 126 S.Ct. 2352, 165 L.Ed.2d 278 (U.S. June 5, 2006) (No. 05–9222), which could have resolved the issues before us. We granted that motion. However, in *Burton v. Stewart,* —— U.S. ——, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007), *vacating sub nom. Burton v. Waddington,* 142 Fed.Appx. 297, the Court did not reach the retroactivity issues surrounding *Blakely*. On January 22, 2007, we issued a consolidated order lifting the stay order on Carmichael's and Ashby's petitions.

B.  *Ashby v. State*

[¶ 7] On June 26, 2001, Everett Ashby pleaded guilty to one count of manslaughter (Class A), 17–A M.R.S.A. § 203(1)(A) (Supp.1998), for conduct that occurred on August 20, 1998.[2] On the date of the

conviction, pursuant to the plea agreement, Ashby was sentenced to thirty-five years, with all but twenty years suspended and probation for six years. Ashby did not appeal either the conviction or the sentence.

[¶ 8] In November 2005, Ashby filed a petition for post-conviction review in the Superior Court contending that the court did not have jurisdiction to impose a sentence of twenty years. In January 2006, the Superior Court (Cumberland County, *Wheeler, J.*) summarily dismissed the petition reasoning that the appeal was time-barred. Ashby then filed a request for a certificate of probable cause with us. Following the request, the procedural history of Ashby's case merged with Carmichael's case.

## II.  DISCUSSION

A.  Retroactivity of *Blakely*

[¶ 9] The petitioners contend that the United States Supreme Court articulated a new constitutional right in *Blakely* by specifically defining the standard to be used in *Apprendi*. The State, however, suggests that *Blakely* is not a new rule. The State asserts that *Apprendi* established a new rule of criminal procedure that *Blakely* "clarified."

[¶ 10] Pursuant to 15 M.R.S. § 2128(5) (2006), a one-year limitations period applies to petitions for post-conviction review. That period begins to run the latest of:

> A.  The date of the final disposition of the direct appeal from the underlying criminal judgment or the expiration of the time for seeking the appeal;

---

2.  Title 17–A M.R.S.A § 203(1)(A) (Supp.1998) was amended after the commission of the crime, but the minor amendment did not modify the substance of the subsection. P.L. 2001, ch. 383, § 9 (effective Jan. 31, 2003) (codified at 17–A M.R.S.A § 203(1)(A) (Supp. 2001)).

B. The date on which the constitutional right, state or federal, asserted was initially recognized by the Law Court or the Supreme Court of the United States, if the right has been newly recognized by that highest court and made retroactively applicable to cases on collateral review; or

. . . .

*Id.*

[¶ 11] Carmichael filed his second petition for post-conviction review years after the final disposition of his underlying criminal conviction. However, he filed his second petition two months after the United States Supreme Court decided *Blakely*. Thus, for Carmichael's petition to be timely, we must determine that *Blakely* newly recognized a constitutional right that is retroactively applicable to Carmichael's collateral appeal. *See id.*

[¶ 12] *Blakely* emerged in the wake of *Apprendi*. In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. Four years later, the United States Supreme Court determined that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

*Blakely*, 542 U.S. at 303–04, 124 S.Ct. 2531 (citations omitted) (emphasis in original). The Court decided *Blakely* on a direct appeal. *See id.* at 301, 124 S.Ct. 2531.

Thus, the question remains whether *Blakely* applies retroactively to cases on collateral appeal.

[¶ 13] In *Teague v. Lane,* the United States Supreme Court fashioned a three-part test to determine whether a constitutional rule of criminal procedure may apply to a case on collateral appeal. 489 U.S. 288, 300–16, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The Court later summarized the three-steps:

> First, the court must determine when the defendant's conviction became final. Second, it must ascertain the "legal landscape as it then existed," and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule. That is, the court must decide whether the rule is actually "new." Finally, if the rule is new, the court must consider whether it falls within either of the two exceptions to nonretroactivity.

*Beard v. Banks,* 542 U.S. 406, 411, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004) (citations omitted). Each of these steps is examined in turn.

### 1. When Carmichael's Conviction Became Final

[¶ 14] For the purpose of determining retroactivity, state convictions are final when the defendant has exhausted the right to directly appeal in state court and the time for filing a writ of certiorari has expired or the United States Supreme Court has denied the petition for certiorari. *Id.* Carmichael did not file a writ of certiorari after we affirmed his underlying conviction on June 20, 2000. Pursuant to United States Supreme Court Rule 13, Carmichael had ninety days after our decision to file a writ of certiorari, after which the conviction became final. *See* SUP. CT. R. 13(1).

## 2. Whether *Blakely* is a New Rule

■ [¶ 15] The second step in the *Teague* analysis requires a determination of whether *Blakely* was dictated by then-existing precedent-*Apprendi*. *See Beard,* 542 U.S. at 413, 124 S.Ct. 2504. This determination includes assessing "whether the unlawfulness of [Carmichael's] conviction was apparent to all reasonable jurists." *See id.* (quotation marks omitted). The content and reasoning of a dissent in the case determining the "new" rule may provide support that the rule is new. *See id.* at 415–16, 124 S.Ct. 2504. However, the mere existence of a dissent does not suffice to show that a rule is new. *Id.* n. 5 at 416, 124 S.Ct. 2504.

■ [¶ 16] To support the proposition that *Blakely* created a new rule for the purposes of determining retroactivity, courts have commonly cited the fact that following *Apprendi* every circuit court that confronted the issue addressed in *Blakely* reached a conclusion opposite to the Court. *See e.g., Schardt v. Payne,* 414 F.3d 1025, 1035 (9th Cir.2005) (collecting cases); *Lilly v. United States,* 342 F.Supp.2d 532, 538–39 n. 5 (W.D.Va.2004) (same); *State v. Febles,* 210 Ariz. 589, 115 P.3d 629, 633–34 n. 5 (Ct.App.2005) (same). Indeed, in determining that *Blakely* was a new rule, the Colorado Supreme Court noted that Justice O'Connor in her *Blakely* dissent explained that only one court had ever applied *Apprendi* to invalidate a sentencing guidelines scheme. *People v. Johnson,* 142 P.3d 722, 726 (Colo.2006) (citation omitted). As explained in *Beard,* the fact that *Blakely* was a 5–4 decision lends further support for the fact that it is a new rule. 542 U.S. at 415–16, 124 S.Ct. 2504.

[¶ 17] Except for the Court in *Blakely,* virtually every court that applied *Apprendi* ruled that it did not dictate invalidating sentencing guidelines schemes. This fact conclusively resolves that *Blakely's* outcome would not have been apparent to a reasonable jurist. We determine that the *Blakely* decision constitutes a new rule for the purposes of determining its retroactive effect.

## 3. *Teague's* Exceptions

■ [¶ 18] *Teague* allows the retroactive application of new rules of constitutional criminal procedure only in two circumstances or "exceptions." The new rule must be: (1) "substantive," or (2) "procedural." *Schriro v. Summerlin,* 542 U.S. 348, 351–52, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). A rule is substantive if it "alters the range of conduct or the class of persons that the law punishes." *Id.* at 353, 124 S.Ct. 2519. If procedural, the rule must be a "watershed rule of criminal procedure." *Id.* at 352, 124 S.Ct. 2519 (quotation marks omitted).

### a. Whether *Blakely* is a Substantive Rule

■ [¶ 19] *Blakely* affected the manner in which defendants are sentenced. It requires facts that increase a defendant's sentence to either be admitted by the defendant or to be found beyond a reasonable doubt by a fact-finder. The rule in *Blakely* was founded entirely on the Sixth Amendment's guarantee for a jury trial. *Blakely* did not alter the range of conduct that was punishable, nor did it apply to a particular class of persons. "Rules that allocate decisionmaking authority [from judge to jury] are prototypical procedural rules ...." *Summerlin,* 542 U.S. at 353, 124 S.Ct. 2519. We determine that *Blakely* is not a substantive rule.

### b. Whether *Blakely* Announced a Watershed Rule of Criminal Procedure

■ [¶ 20] To apply retroactively under *Teague* as a procedural rule, *Blakely* must have announced a watershed rule of crimi-

nal procedure that implicates the "fundamental fairness and accuracy of the criminal proceeding." *Id.* at 355, 124 S.Ct. 2519 (citation omitted). This exception applies only "to those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Teague,* 489 U.S. at 313, 109 S.Ct. 1060.

[¶ 21] Almost every court that has considered the issue has determined that *Teague* does not allow the retroactive application of *Blakely.* *Smart v. State,* 146 P.3d 15, 50 (Alaska App. 2006) (Mannheimer, J. concurring). Courts that provided the most complete and persuasive analysis of whether *Blakely* was a watershed rule of criminal procedure addressed the issue in two steps: (1) analyzing *Blakely's* changing of the fact-finder from judge to jury, and (2) analyzing the change in the burden of proof to beyond a reasonable doubt. *See, e.g., Schardt,* 414 F.3d at 1036; *Lloyd v. United States,* 407 F.3d 608, 613–15 (3d Cir.2005) (determining under *Booker* not *Blakely* ); *United States v. Price,* 400 F.3d 844, 848–49 (10th Cir. 2005); *Johnson,* 142 P.3d at 726–28.

[¶ 22] The United States Supreme Court's decision in *Summerlin* determines the first step of the inquiry. In *Summerlin,* the Court considered whether a new procedural rule announced in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), applied retroactively to cases on collateral review. *Summerlin,* 542 U.S. at 358, 124 S.Ct. 2519. The Court explained that *Ring* announced that an aggravating factor which permitted the death penalty if found beyond a reasonable doubt, must be found by a jury not a judge. *Id.* at 351, 124 S.Ct. 2519.

[¶ 23] The Court, in *Summerlin,* determined that judicially-based fact-finding did not seriously diminish accuracy so that there was an "impermissibly large risk of punishing conduct that the law did not reach." *Id.* at 355–56, 124 S.Ct. 2519 (quotation marks omitted). The Court concluded that the evidence of whether juries or judges were better fact-finders was simply too varied to conclude that judicial fact-finding was less accurate at all, let alone conclude that it was seriously less accurate than jury fact-finding. *See id.* Thus, *Summerlin* supports the conclusion that the shift in fact-finder does not amount to a watershed rule of criminal procedure.

[¶ 24] However, *Summerlin* is only partially applicable to the determination of whether *Blakely* is a watershed rule of criminal procedure. *Ring* shifted the same burden of proof—beyond a reasonable doubt—from the judge to jury. Thus, as the Court noted in *Summerlin, Apprendi's* requirement that all facts be proved beyond a reasonable doubt was already satisfied. *Id.* at 351 n. 1, 124 S.Ct. 2519. The sentencing scheme at issue in *Blakely,* however, did not provide that judges had to find sentencing enhancements beyond a reasonable doubt. *See Blakely,* 542 U.S. at 299, 124 S.Ct. 2531.

[¶ 25] This distinction between *Summerlin* and *Blakely* requires the second step of the analysis: determining whether *Blakely's* holding that a jury must find the existence of sentencing facts *beyond a reasonable doubt* constitutes a watershed rule of criminal procedure.

[¶ 26] To answer this question, courts using the two-step analysis have analyzed the retroactivity of *Apprendi.* *Apprendi* announced a rule that altered the standard of proof required for sentencing enhancements to beyond a reasonable doubt. After *Apprendi,* every circuit court, save the District of Columbia Circuit which has yet to address the issue, determined that *Apprendi* did not create a watershed rule of criminal procedure. *Lilly,* 342 F.Supp.2d

at 538 n. 4 (collecting cases).[3] Thus, the conclusion follows that the *Blakely* burden of proof requirement likewise does not make for a watershed rule of criminal procedure.

[¶ 27] We find the above two-step analysis supports the conclusion that *Blakely* is not a watershed rule of criminal procedure entitled to retroactive application. In addition to the two-step analysis, we note, as many courts using the analysis also have, that a watershed rule of criminal procedure is a rule that is "central to the accurate determination of innocence or guilt." *Beard,* 542 U.S. at 417, 124 S.Ct. 2504 (quotation marks omitted). It is axiomatic that *Blakely* concerns sentencing, which occurs after the determination of guilt. *Blakely* does not affect the accuracy of the guilt phase of a criminal proceeding. We thus conclude that *Blakely* is not a watershed rule of criminal procedure.

B.   Retroactivity of *Schofield*

[¶ 28] Ashby filed a petition for post-conviction review on November 30, 2005. Pursuant to 15 M.R.S. § 2128(5), Ashby's claim that his sentence violated *Blakely* is time-barred because he filed his petition over one year after the Court issued *Blakely.* We, however, issued our decision in *Schofield* on June 29, 2005. Ashby's petition was within the one-year statute of limitations of the *Schofield* decision, and his petition would be timely if *Schofield* announced a new constitutional right that applies retroactively to cases on collateral review. *Id.* § 2128(5)(B).   Carmichael

filed his second post-conviction petition, which we now review, before we announced *Schofield.* However, by asserting a *Blakely* claim, Carmichael has preserved his right to argue that his sentence also violates *Schofield.*

[¶ 29] We have adopted the *Teague* test to determine whether a new rule of criminal procedure applies retroactively. *Casella v. State,* 2002 ME 117, ¶ 12, 802 A.2d 404, 408; *Thompson v. State,* 625 A.2d 299, 300 (Me.1993). We have not applied the *Teague* test to our decision in *Schofield.* An application of the *Teague* test is dispositive of whether Ashby's post-conviction petition is time-barred. Thus, the same three-step *Teague* analysis applied to *Blakely* must be reapplied to *Schofield.*

1.   When Ashby's Conviction Became Final

[¶ 30] Ashby pleaded guilty in 2001 and did not appeal the conviction. His conviction became final in 2001.

2.   Whether *Schofield* is a New Rule

■ [¶ 31] In *Schofield,* we held that the Sixth Amendment prohibited judges from finding a sentencing enhancement that increased a sentence beyond twenty years if the conduct involved was "among the most heinous crimes." 2005 ME 82, ¶ 2, 895 A.2d at 929. Schofield was sentenced pursuant to 17-A M.R.S.A. § 1252(2)(A) (Supp.2001),[4] which provided:

In the case of a Class A crime, the court shall set a definite period not to exceed

---

3.   The *Lilly* court mistakenly states that every circuit court has determined that *Apprendi* does not apply retroactively. Its citation to the D.C. Circuit, however, does not support that statement.

4.   As noted in *Schofield:*
In 2004, section 1252(2)(A) was amended by P.L.2003, ch. 657 § 10 (effective July 30,

2004) (codified at 17-A M.R.S.A § 1252(2)(A) (Supp.2004)), to provide: "In the case of a Class A crime, the court shall set a definite period not to exceed 30 years."
*State v. Schofield,* 2005 ME 82, ¶ 9, n. 4, 895 A.2d 927, 930.

40 years. The court may consider a serious criminal history of the defendant and impose a maximum period of incarceration in excess of 20 years based on either the nature or seriousness of the crime alone or the nature and seriousness of the crime coupled with the serious criminal history of the defendant.

[¶ 32] Schofield had no criminal history and thus the court could have imposed a twenty-eight-year sentence only if it determined that her criminal conduct was among the most heinous and violent crimes committed against a person. *Schofield,* 2005 ME 82, ¶ 16, 895 A.2d at 932. The court made that finding by a preponderance of the evidence. *Id.*

[¶ 33] We reached our conclusion that the court's second-tier sentence violated the Sixth Amendment relying on *Apprendi* and *Blakely. Id.* ¶¶ 17–20, 895 A.2d at 932–33. We focused on *Blakely's* holding that the statutory maximum for *Apprendi* purposes was "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id.* ¶ 17, 895 A.2d at 932 (quoting *Blakely,* 542 U.S. at 303–05, 124 S.Ct. 2531 (citations omitted) (emphasis in original)). We determined that because the finding that Schofield's crime was among the most heinous crimes committed against a person was not pleaded and proved beyond a reasonable doubt, nor admitted by Schofield, her sentence violated the Sixth Amendment. *Schofield,* 2005 ME 82, ¶ 21, 895 A.2d at 933.

[¶ 34] We determined that the comparative nature of the finding did not matter. *Id.* ¶¶ 22–25, 895 A.2d at 933–34. We found that a number of jurisdictions required that juries find whether a crime was "especially heinous" as an aggravating factor warranting the death penalty. *Id.* ¶ 23, 895 A.2d at 933–34. We also noted that the United States Supreme Court decided in *Ring* that a jury must determine aggravating factors in a death penalty case, one of which was to determine whether the crime was committed in an "especially heinous, cruel or depraved manner." *Id.* ¶ 25, 895 A.2d at 934 (quotation marks omitted).

[¶ 35] *Schofield,* however, divided us: three justices dissented, contending that the sentence Schofield received did not violate the Sixth Amendment. *Id.* ¶ 42, 895 A.2d at 938 (Clifford, J., dissenting). The dissent noted that we have long held that facts incident to a crime used to enhance a penalty must be pleaded and proved beyond a reasonable doubt. *Id.* ¶ 43, 895 A.2d at 938–39 (citations omitted). The dissent explained, however, that the factual findings made by the judge in *Schofield* did not have be pleaded and proved. *Id.* ¶ 48, 895 A.2d at 940. Those findings were not the "discrete factual findings" made in *Apprendi* and *Blakely,* but rather an evaluative analysis that compared Schofield's crime to the other ways in which a criminal act can be committed. *Id.* The dissent explained such an analysis had historically been judicially determined. *Id.* In the dissent's view, *Apprendi* and *Blakely* did not intend to usurp judges' traditional ability in sentencing to engage in a comparative analysis that would be difficult and improper for a jury to resolve. *Id.* ¶ 51, 895 A.2d at 941.

[¶ 36] The dissent's reasoning demonstrates that while *Blakely* supported *Schofield,* reasonable jurists differed over whether *Blakely* compelled our ruling in *Schofield. See Beard,* 542 U.S. at 416, 124 S.Ct. 2504. Pursuant to *Teague,* the unlawfulness of Schofield's conviction would not have been apparent to all reasonable jurists.

[¶ 37] Other courts struggled with exactly the same question after *Blakely.* They too were divided, further supporting that

reasonable jurists could have concluded that *Blakely* did not mandate that a jury find the type of sentencing enhancement in *Schofield*.

[¶ 38] In *State v. Foster*, the Ohio Supreme Court determined the application of *Blakely* to Ohio's sentencing statutes. 109 Ohio St.3d 1, 2006–Ohio–856, 845 N.E.2d 470. The court examined many sentencing provisions, one of which provided that "the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense . . . only upon offenders who have *committed the worst forms of the offense* . . . ." *Id.* ¶ 44, 845 N.E.2d 470; OHIO REV. CODE ANN. § 2929.14(C) (LexisNexis 2007) (emphasis added). Although the court, in *Foster*, noted that most Ohio appellate courts determined that *Blakely* was inapplicable to the sentencing enhancements, such as section 2929.14(C), it found that use of judicial fact-finding to reach a maximum sentence violated *Blakely*. 109 Ohio St.3d 1, 2006–Ohio–856, 845 N.E.2d 470, at ¶¶ 50, 83. Its determination is thus in line with *Schofield*.

[¶ 39] Before *Foster*, however, the judges of the Ohio appellate courts were split on the issue. In *State v. Quinones*, an appeals court determined that the jury must make a finding of whether Quinones committed the worst form of the offense. No. 83720, 2004 WL 1903250, at ¶¶ 14–15, 2004 Ohio App. LEXIS 4072, at ¶¶ 29–30 (Aug. 26, 2004). The decision elicited a dissent which explained that a judge's determination that the defendant committed the worst form of the offense did not implicate *Blakely* because the determination did not necessitate additional fact-finding. *Id.* ¶¶ 40–44. In *State v. Abdul–Mumin*, an appeals court concluded that a judge's determination of the seriousness of the offense did not contradict *Blakely*, because judges had traditionally concluded those elements during sentencing. Nos. 04AP–485, 04AP–486, 2005 WL 315062, at ¶¶ 23–25, 2005 Ohio App. LEXIS 527, at ¶¶ 28–29 (Feb. 10, 2005).

[¶ 40] In *State v. Lett*, an appeals court sitting en banc determined that judicial determination of whether the offender committed the worst form of the offense did not implicate *Blakely*, reasoning that such determinations were within the exercise of a judge's discretion in sentencing. 161 Ohio App.3d 274, 2005 Ohio 2665, 829 N.E.2d 1281, at ¶¶ 21–25. A single judge, however, disagreed with that part of the court's decision and dissented. *Id.* ¶¶ 131–36, 829 N.E.2d 1281.

[¶ 41] Coupled with our disagreement, the division in the Ohio courts over whether a judge's determination of the seriousness of the offense violates *Blakely* plainly demonstrates that reasonable jurists differed over whether *Blakely* compelled the result in *Schofield*. We therefore conclude that *Schofield* announced a new rule. *Schofield* applies to cases on collateral review only if it falls under one of *Teague's* exceptions.

### 3. *Teague's* Exceptions

[¶ 42] Having decided that *Schofield* announced a newly recognized constitutional right, pursuant to *Teague* we must determine whether that right is either substantive or a watershed rule of criminal procedure. However, our determination that the *Teague* exceptions are inapplicable to *Blakely* necessarily makes them inapplicable to *Schofield*. *Schofield* merely applied *Blakely* to a specific Maine statute. As we discussed above, *Blakely* is not a substantive rule, nor a watershed rule of criminal procedure, and thus does not apply retroactively to cases on collateral appeal. It follows a fortiori that as an application of *Blakely*, *Schofield* does not apply retroactively to cases on collateral appeal.

The entry is:

The dismissals of Carmichael's and Ashby's petitions for post-conviction review are affirmed.

