Filed 2/20/26  P. v. Hall CA1/1
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GARY MARCUS HALL,<br><br>Defendant and Appellant. | A165406<br><br>(Del Norte County<br>Super. Ct. No. CRF219022) |

Defendant Gary Marcus Hall pleaded no contest to two counts of committing lewd or lascivious acts on a child under the age of 14 years (Pen. Code, § 288, subd. (a)).[1]  Consistent with the negotiated disposition, the trial court sentenced him to 10 years in state prison, which included the upper term on one of the counts.

Defendant appealed asserting (1) the trial court (and the parties) mistakenly assumed he was presumptively ineligible for probation, (2) the court erred in finding aggravating factors that had not been pled, and (3) the court erred in finding these aggravating factors in the absence of his personal waiver of his right to jury trial under the Sixth Amendment.  We rejected each of defendant's arguments and affirmed the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

As to his third assertion—that he did not personally waive his Sixth Amendment right to jury trial[2]—we affirmed on two grounds. First, we held defendant had, in fact, waived his Sixth Amendment right to jury trial on aggravating factors. Second, we held the trial court had, in any case, relied on at least one permissibly established aggravating factor—defendant's multiple convictions[3]—and therefore, under *People v. Black* (2007) 41 Cal.4th 799 (*Black II*),[4] the aggravated sentence was not constitutionally infirm. Defendant sought review by our Supreme Court of both grounds. The court granted review and deferred further action "pending consideration and disposition of a related issue in *People v. Lynch*, S274942 (see Cal. Rules of Court, rule 8.512(d)(2)), or pending further order of the court." (*People v. Hall* (*Hall*), S283530, Supreme Ct. Mins., Feb. 28, 2024.)

In its subsequently issued its opinion in *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*), the high court majority held the court's earlier analysis in *Black II* is no longer sound given recent amendments to section 1170, subdivision (b). (*Lynch*, at pp. 756–757.) Rather, section 1170, subdivision (b) now requires that "the facts supporting *every* aggravating circumstance upon which the trial court relies to 'justify' imposition of the upper term must be properly proven as the statute requires." (*Lynch*, at p. 757.) Accordingly, "under the current statute a Sixth Amendment

---

[2] He expressly disavowed any reliance on the then-recently enacted statutory right to jury trial under section 1170, subdivision (b).

[3] Known as the "recidivist factor," it is set forth in California Rules of Court, rule 4.421(b)(2) which states: "The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness." All further references to the "rules" are to the California Rules of Court.

[4] Overruled in *People v. Wiley* (2025) 17 Cal.5th 1069, 1084 (*Wiley*).

violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Lynch,* at p. 768.) And any such "violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements. If the reviewing court cannot so determine, applying the *Chapman*[5] standard of review, the defendant is entitled to a remand for resentencing." (*Lynch,* at p. 768.) The court went on to "disapprove *People v. Hall* [(2023)] 97 Cal.App.5th [1101], 1104–1108, *People v. Ruiz* [(2023)] 97 Cal.App.5th 1068, 1076–1078, *People v. Falcon* [(2023)] 92 Cal.App.5th 911, 938–939, *People v. Butler* [(2023)] 89 Cal.App.5th 953, 960, *People v. Lewis* [(2023)] 88 Cal.App.5th 1125, *People v. Ross* [(2022)] 86 Cal.App.5th 1346 . . . , *People v. Dunn* [(2022)] 81 Cal.App.5th 394, 407, *People v. Zabelle* [(2022)] 80 Cal.App.5th 1098, 1110–1113, *People v. Lopez* [(2022)] 78 Cal.App.5th 459, 467, footnote 11, and *People v. Flores* [(2022)] 75 Cal.App.5th 495, 500, to the extent they are inconsistent with today's opinion." (*Id.* at pp. 768–769.)

The high court thereafter transferred the instant case back to us "with directions to vacate its decision and reconsider the cause in light of" *Lynch.* (*Hall, supra,* S283530, Supreme Ct. Mins., June 12, 2025.) As the court did not grant review in *Lynch* on the issue of jury trial waiver, nor did the court grant review on that issue in the instant case, we again affirmed his aggravated sentence, but on the ground of jury waiver, alone. We subsequently granted rehearing to consider new case authority submitted by

_____

[5] *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).

3

defendant on that issue. Having done so, we again affirm his aggravated sentence.

## FACTUAL AND PROCEDURAL SUMMARY[6]

Defendant, a registered sex offender, was friends, and resided, with the two victims' grandfather.[7] The victims were under the age of 14 at the time of the molestations. One recalled approximately 20 incidents of abuse, including instances of defendant fondling his penis, masturbating him, and orally copulating him. The last incident occurred when he was 12 or 13 years old. The other victim recalled four instances where defendant molested him when he was under or around 10 years old. Defendant variously sodomized him, lay in bed with him and pulled down his underwear, and grabbed his penis over his clothes.

In 2021, the People charged defendant with sodomy of a child 10 years old or younger (§ 288.7, subd. (a)); two counts of continuous sexual abuse of a child (§ 288.5, subd. (a)); and failure to register as a sex offender (§ 290.018). The continuous sexual abuse counts included an enhancement allegation of a prior conviction of section 288 (§ 667.51, subd. (a)). Defendant faced a potential sentence of 25 years to life on the sodomy count, 16 years each on the continuous abuse counts plus five years each for the related enhancements, and one year on the failure to register count—in sum, 68 years to life.

---

[6] We discuss pertinent factual and procedural details in our discussion of the issues before us.

[7] Our factual summary is based in part on the transcript of the preliminary hearing, which the parties stipulated provided a factual basis for defendant's plea.

4

At the preliminary hearing, the trial court admitted evidence of a 1995 misdemeanor conviction for violation of section 288, subdivision (c)—lewd or lascivious acts on a child 14 or 15 years old—which required defendant to register as a sex offender.

Shortly before trial, pursuant to a negotiated disposition, the People filed an amended information, adding two felony counts of committing lewd acts upon a child under the age of 14 (§ 288, subd. (a))—one count for each victim—to which defendant pleaded no contest. As summarized on the change of plea form, the disposition provided that the trial court "could grant probation with time in jail all the way up to 10 years in prison (base term plus 1/3 the middle term for the 2nd count if ran [*sic*] consecutive)." Defendant initialed the provision of the form that stated, "I understand that I am not eligible for probation in this case. [P]resumptively ineligible." We discuss further details about the change of plea form and the plea and sentencing hearings, *infra*, at pages 16–19.

Prior to accepting defendant's no contest pleas, the court reviewed the plea form with him and defendant personally confirmed that he read and understood it and had given up all the rights as stated therein, including his "right to have a jury trial." Counsel then stipulated that the preliminary hearing transcript could be used as a factual basis for the plea, with defense counsel stating defendant was "not admitting guilt in any way." The trial court then proceeded to admonish defendant that the disposition included his giving up his rights, including the right to jury trial, and defendant expressly stated, "Yes," he was giving up that right. At the sentencing hearing, both the prosecutor and defense counsel confirmed the trial court would consider all sentencing factors, both mitigating and aggravating.

Victim statements were given by a close friend of the victims' grandmother, who had known the victims all their lives, and one of the victims appeared.

The prosecution urged the court to impose the upper term, pointing out "[i]t only takes one factor [in aggravation] under the case law to—for the Court to do an aggravated sentence." He then urged the court to find applicable all the factors in aggravation recommended in the probation report, as well as several additional aggravating factors. The probation officer emphasized the "long-term emotional, mental, and psychological ramifications" for the victims.

At the conclusion of the prosecution's presentation, defendant spoke, stating "The kids are lying. I have said that from the beginning, and I still say it. . . . [T]heir behavior isn't from anything I have done. They have been rotten behavior from the get-go. . . . [¶] . . . They didn't like the way I disciplined. . . . [¶] It's not me that didn't show remorse. I didn't do it. . . ." Defense counsel agreed her client had maintained he was innocent from "day one," and acknowledged "he is angry; he is upset." She also acknowledged that his prior section 288 conviction "made this a very difficult case," and stated the only reason he agreed to a negotiated disposition was to avoid the risk of a potential life sentence. Counsel asked the court to consider a midterm and not impose consecutive sentences; "[a]gain, my client is adamant that he's been falsely accused."

The probation officer then provided further testimony, stating when he asked defendant about his prior section 288 conviction, he said that case "was all lies, and he was railroaded in that case." "[F]or some reason the young men in this case as well as the counselors in that [prior case] were out to get him for some reason."

6

The court found defendant ineligible for probation and further found no mitigating factors and seven aggravating factors set forth in rule 4.421. Commenting that the aggravating circumstances "far, far outweigh" the circumstances in mitigation, the court sentenced defendant to a 10-year prison term, comprised of the upper term of eight years for count 5 and two years (one-third of the six-year middle term) for count 6. The remaining counts were dismissed.

## DISCUSSION

### *Ineligibility for Probation*

On appeal, defendant maintained the trial court (and counsel) erred in assuming he was presumptively ineligible for probation under section 1203, subdivision (e)(5), as stated in the sentencing report. Defendant pointed out section 1203, subdivision (e)(5) provides such a presumption only where there has been a prior conviction of section 288 as a felony, and he was convicted of violating section 288 as a misdemeanor. On remand, defendant made no new challenge as to this issue, and our opinion remains unchanged on this point.

Accordingly, while defendant is correct that his misdemeanor conviction did not give rise to a presumption of ineligibility for probation, he made no objection at the time of sentencing to the court's invocation of such presumption and therefore waived the issue on appeal. (See *People v. Scott* (1994) 9 Cal.4th 331, 353.) Recognizing this was likely the case, defendant alternatively advanced a claim of ineffective assistance of counsel.

The standard of review for an ineffective assistance of counsel claim is well established. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient

7

performance prejudiced the defense." (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." (*Id.* at p. 697.) Indeed, it is often easier to dispose of such a claim based on lack of sufficient prejudice alone. (*Ibid.*) To prevail on an ineffective assistance of counsel claim, "the petitioner must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." (*People v. Williams* (1988) 44 Cal.3d 883, 937, quoting *People v. Stephenson* (1974) 10 Cal.3d 652, 661.)

We agreed with the Attorney General that defendant could not show prejudice attributable to the asserted ineffectiveness of counsel. "The standard for analyzing prejudice in an ineffective assistance of counsel claim mirrors the state standard for prejudicial error. (*Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050–1051. . . .) That is, 'a "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' (*People v. Watson* (1956) 46 Cal.2d 818, 836. . . .)" (*People v. Lepere* (2023) 91 Cal.App.5th 727, 738.)

We therefore concluded, and continue to conclude, there is no reasonable probability a result more favorable to defendant would have ensued had counsel urged that defendant was eligible, and not presumptively ineligible, for probation. First, defendant was, in fact, wholly ineligible, not merely presumptively ineligible, for probation pursuant to section 1203.066, subdivision (a)(5) and (7). These provisions state, "Notwithstanding Section 1203 or any other law, probation shall not be granted to . . . [¶] . . . [¶] (5) A

8

person who is convicted of committing a violation of Section 288 or 288.5 and who has been previously convicted of a violation of Section 261, 264.1, 266, 266c, 267, 285, 286, 287, 288, 288.5, or 289, or former Section 262 or 288a . . . [¶] . . . [¶] [or] (7) A person who is convicted of committing a violation of Section 288 or 288.5 against more than one victim." (§ 1203.066, subd. (a)(5), (7).) Second, even if defendant was fully eligible, there was no reasonable probability the court would have granted probation, given the court's statements at the sentencing hearing and its imposition of the maximum allowable sentence under the terms of the plea agreement.

### *"Pleading" Aggravating Factors*

On appeal, defendant maintained the then-recent amendments to section 1170, subdivision (b)(1) made by Senate Bill No. 567 (2021–2022 Reg Sess.) require the prosecution to "plead" any aggravating factors it intends to urge at sentencing. After defendant filed his opening brief, the Court of Appeal in *People v. Pantaleon* (2023) 89 Cal.App.5th 932, 939–941 (*Pantaleon*),[8] addressed and rejected this same contention. We agreed, and continue to agree, with the analysis in *Pantaleon*, which points out there is a significant distinction between "enhancements," which section 1170.1, subdivision (e) requires "shall be alleged in the accusatory pleading" (§ 1170.1, subd. (e)) and " 'circumstances in aggravation' " addressed by section 1170, subdivision (b), which does not contain a like mandate. (*Pantaleon,* at pp. 939–940; see *Chavez Zepeda v. Superior Court* (2023) 97 Cal.App.5th 65, 96–97 & fn. 8 (*Chavez Zepeda*) [amended statute does not require prosecutor to present evidence supporting aggravating factors at

---

[8] Disapproved on another ground in *Wiley, supra,* 17 Cal.5th at pages 1077–1078, 1085–1086.

9

preliminary hearing].)  In short, as *Pantaleon* explains, defendant's sentence was not constitutionally or statutorily infirm due to failure to allege sentencing factors in aggravation.

In his petition for rehearing of our decision on appeal, defendant urged that we had misperceived his argument as one based solely on recent amendments to section 1170, subdivision (b)(1), and his argument was, in fact, based "on a line of California cases" like *People v. Mancebo* (2002) 27 Cal.4th 735, and therefore *Pantaleon* was inapposite.  In *Mancebo*, our Supreme Court reiterated that "a defendant has a cognizable due process right to fair notice of the specific *sentence enhancement* allegations that will be invoked to increase punishment for his crimes."  (*Id*. at p. 747, italics added.)  But as the court in *Pantaleon* explained, there is a long-recognized distinction between sentencing enhancements and aggravating factors. (*Pantaleon, supra*, 89 Cal.App.5th at pp. 939, 941.)  *Pantaleon* therefore rejected the defendant's "constitutional theory of error" that he had not only a statutory right to pleading notice of aggravating factors, but also a "fair notice" due process right to pleading notice of factors in aggravation.  (*Id*. at pp. 940–941.)  Indeed, the appellate court observed the "defendant's constitutional theory of error [was] foreclosed by binding [Supreme Court] authority."  (*Id*. at p. 941, citing *In re Varnell* (2003) 30 Cal.4th 1132, 1135, 1141–1142.)

In his supplemental brief on remand following the high court's decision in *Lynch*, defendant acknowledged the court had not addressed the issue of " 'pleading and notice' " of aggravating factors.  (See *Lynch, supra*, 16 Cal.5th at p. 769.)  Nevertheless, defendant urged us to revisit the issue in light of "subsequent developments" (capitalization & boldface omitted) in several other cases.  We declined to do so.

10

To begin with, although defendant sought review of the pleading issue, the high court did not take it up in either *Lynch*, or more significantly, the instant case. Our charge on remand is to reconsider the matter only as ordered by the Supreme Court—that is, in light of *Lynch*. "When a case is transferred or remanded to the [C]ourt of [A]ppeal for further proceedings, the scope of the [C]ourt of [A]ppeal's jurisdiction is determined by the [S]upreme [C]ourt's decision or order." (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group December 2024 Updated) ¶13:202.2, citing *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701 [the order of the reviewing court contained in its remittitur "defines the scope of the jurisdiction of the court to which the matter is returned," and the " ' "lower court cannot reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case" ' "]; see *Boermeester v. Carry* (2024) 100 Cal.App.5th 383, 386 [Supreme Court remanded matter with "clear instructions," and "[w]e are bound by these instructions"].) The high court transferred this matter back to us to us with "directions to vacate" our decision "and reconsider the cause in light" of *Lynch*. Nothing in the court's order suggests we should revisit our conclusion that defendant's sentence is not constitutionally infirm due to lack of pleading aggravating factors.

In any case, in *Lynch,* the high court commented briefly on the defendant's "notice" argument advanced in opposing any prejudice analysis (under either *Chapman* or *Watson*) on "due process" grounds and rejected it

11

for reasons that suggest there is no constitutionally mandated pleading requirement.[9]

Additionally, none of the cases defendant cited in his supplemental briefing reached a conclusion different than did *Pantaleon* as to pleading aggravating factors. While subsequent cases have criticized and parted company with *Pantaleon* on the issues decided to the contrary in *Lynch,* no case has disagreed with *Pantaleon*'s holding as to pleading aggravating factors. (See *Wiley, supra,* 17 Cal.5th at pp. 1085–1086 [disapproving

---

[9] The high court first observed, "When a statute includes specific pleading and proof requirements, 'the People's failure to include a multiple-victim-circumstance allegation must be deemed a discretionary charging decision' which 'restrict[s] the trial court to this application.'" (*Lynch, supra,* 16 Cal.5th at p. 752.) It went on to explain, "Because Lynch was tried and sentenced under the 2007 version of section 1170, this case does not directly present issues of pleading and notice. Accordingly, it is not necessary for us to decide exactly what the statute and the federal Constitution demand in this context. But to the extent pleading and notice issues bear on whether a prejudice analysis is appropriate, we find the situation here to be different from [the due process cases cited by the defendant], rendering them distinguishable. [¶] Each of the substantive offenses of which Lynch was convicted was charged in the information. The Penal Code gave notice of the applicable sentencing range for each offense. The statutory structure, case law, and California Rules of Court set out the contours of the hearing process. The probation report and the People's statement in aggravation advised Lynch of all the aggravating circumstances that the court could rely upon to impose the upper sentence. All the aggravating circumstances actually relied on by the court have long been set out in the Rules of Court. (Cal. Rules of Court, rule 4.421.) Parties regularly discuss their presence or absence during plea negotiations and consider them in preparation for a sentencing hearing. In short, Lynch had notice of potentially aggravating circumstances, had the opportunity to contest them at the sentencing hearing, and actually did contest three of the factors. Moreover, because the previous sentencing structure did not require that aggravating circumstances be set out in the charging document, the People's failure to plead and prove them cannot be 'deemed a discretionary charging decision.'" (*Id.* at pp. 752–753.)

*Pantaleon* to the extent it is inconsistent with the high court's holding in

*Lynch* that "a defendant is entitled to a jury trial on all aggravating facts,

other than the bare fact of a prior conviction and its elements, that expose the

defendant to imposition of a sentence more serious than the statutorily

provided midterm" (fn. omitted)]; *Chavez Zepeda, supra*, 97 Cal.App.5th at

pp. 92–97 [recognizing distinction between enhancements and aggravating

factors, and holding aggravating circumstances need not be supported by

evidence at the preliminary hearing]; *Lovelace v. Superior Court* (2025)

108 Cal.App.5th 1081, 1105 [holding "residual clause" (rule 4.421(c)) exceeds

legislative delegation of authority to the Judicial Council under section

1170.3 and thus violates the separation of powers clause of the California

Constitution].)[10]  *In re Vaquera* (2024) 15 Cal.5th 706, 725, which defendant

also cited, does not take issue with any of these cases.  Rather, the court in

that case addressed the specifics of the One Strike law, holding the

prosecution must include allegations informing the defendant of its intent to

---

[10] Defendant points to the following language in Justice Goldman's concurring opinion in *Lovelace*: "[S]ubdivision (b)(2) of section 1170 provides that, 'upon request of the defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements.'  As noted above, the People contend that this language establishes a pleading requirement for aggravating factors, including enumerated ones.  Although at least one court has found the language ambiguous on that score (see [*Pantaleon, supra*, 89 Cal.App.5th at p.] 940 . . .), it seems to me that the People's reading is correct; while the statute does not expressly say that circumstances in aggravation must be alleged, it would defeat the Legislature's purpose in requiring bifurcation if the prosecution could avoid it simply by declining to plead them."  (*Lovelace, supra*, 108 Cal.App.5th at p. 1118, conc. opn. by Goldman, J.)

However, this was not an issue addressed by the majority opinion. And, unlike in *Lovelace,* the People make no such concession here.

13

invoke that sentencing scheme and the basis for doing so.[11] (*In re Vaquera,* at pp. 723–725.)

In sum, in the absence of any case holding that constitutional due process requires that factors in aggravation be pleaded, we follow established precedent to the contrary.

### Constitutional Right to Jury Trial on Aggravating Factors

Defendant's principal claim on appeal was that the aggravated term imposed by the trial court was unlawful because he did not, himself and in open court, waive his constitutional right to a jury trial on the facts underlying the aggravated factors, as required by *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*) and *Blakely v. Washington* (2004) 542 U.S. 296 (*Blakely*).[12] (See generally *Black II, supra*, 41 Cal.4th 799, 816;

---

[11] We also note that while the Legislature has amended a number of sentencing statutes in the last several years, including section 1170, it has made no further amendments to section 1170, subdivision (b)(1) in light of *Pantaleon.* (See *People v. Nasalga* (1996) 12 Cal.4th 784, 792, fn. 7 [noting Legislature had taken no action to abrogate longstanding case law, although "it easily could have done" so]; *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1156 [" ' "[w]here a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction" ' "; "Legislature's failure to amend [statute] while not conclusive, 'may be presumed to signify legislative acquiescence' " in court's prior opinion].)

[12] At oral argument, counsel reiterated that defendant was advancing only a constitutional claim under the Sixth Amendment and was not challenging his aggravated sentence under section 1170, as amended by Senate Bill No. 567 (2021–2022 Reg. Sess.).

Couzens et al., Sentencing California Crimes (The Rutter Group 2023) ¶ 10:1 et seq.)

Federal constitutional precedent establishes that " '[o]ther than the fact of a prior conviction, *any* fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' (*Apprendi* [*v. New Jersey* (2000)] 530 U.S. [466,] 490 . . . [(*Apprendi*)].)" (*Black II, supra*, 41 Cal.4th at p. 814.) The "relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum [the judge] may impose *without* any additional findings." (*Blakely, supra*, 542 U.S. at pp. 303–304.)

There are two exceptions to a defendant's Sixth Amendment right to a jury trial on aggravating facts—facts admitted by the defendant and the fact of a prior conviction. (*People v. Sandoval* (2007) 41 Cal.4th 825, 836–837 (*Sandoval*),[13] citing *Blakely, supra*, 542 U.S. at pp. 301, 303; *Apprendi, supra*, 530 U.S. at p. 490; see *Wiley, supra*, 17 Cal.5th at p. 1086 ["a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements"].) Otherwise, the defendant must personally waive his Sixth Amendment right to jury trial in order for the trial court to find aggravating circumstances that increase the defendant's sentence beyond the statutory maximum. (*Wiley*, at p. 1086; *Black II, supra*, 41 Cal.4th at p. 816; *People v. French* (2008) 43 Cal.4th 36, 47–48 (*French*).)

In our opinion prior to the Supreme Court's grant of review, we firstly held, that under well-established precedent, including controlling authority by our high court, defendant knowingly and intelligently waived his

---

[13] Superseded by statute on another ground as stated in *Lynch, supra*, 16 Cal.5th at page 757.

15

*constitutional* right to a jury trial, including as to aggravating factors, and his aggravated sentence is constitutionally permissible for that reason, alone. We secondly held, as an additional ground for affirmance, that even if defendant did not waive his constitutional jury trial right, the trial court found at least one aggravating factor—recidivism pursuant to rule 4.421(b)(2)—on a basis consistent with the Sixth Amendment and therefore, under *Black II*, his aggravated sentence was not *constitutionally* infirm.

Although, the court in *Lynch* rejected our second holding (*Lynch, supra*, 16 Cal.5th at p. 761), our first ground for upholding defendant's aggravated sentence—that he *did* waive his Sixth Amendment right to jury trial— remains unimpeached by *Lynch*.[14]

Defendant nevertheless asked us on remand to reconsider our threshold determination that he waived his constitutional right to jury trial on the aggravating circumstances. We declined to do so. Rather, we reiterated that we would reconsider the appeal as ordered by the Supreme Court—that is in light of *Lynch*. (See discussion, *ante*, at p. 12.) We therefore adopted and set forth our prior discussion of defendant's waiver of his constitutional right to jury trial.

We again recite the facts and circumstances pertinent to the issue of jury trial waiver. Following the preliminary hearing and just prior to trial, the parties reached a negotiated disposition, and in accordance therewith

---

[14] In fact, the high court observed in *Lynch* that the defendant in that case had neither been asked "to expressly waive jury trial on aggravating circumstances" nor to "stipulate to the facts underlying any of the aggravating circumstances listed by the trial court in support of its upper term sentence," and thus the court had "no occasion . . . to address the conditions applicable to waiver and stipulation." (*Lynch, supra*, 16 Cal.5th at p. 769.)

defendant executed a felony change of plea form. Among other provisions of the plea form, he initialed the provision stating, "I understand that the Court will not decide whether to accept a plea or sentence bargain or to impose sentence or extend probation until a Probation Officer makes an investigation and reports on my background, prior record (if any) and the circumstances of the case."

He additionally initialed the provisions of the form waiving his rights, to among other things, a jury trial. These provisions stated, in pertinent part, "10. I understand that, as to each charge I plead to and each special allegation and/or sentence enhancement I admit to be true, I have the following rights: [¶] . . . [¶] b. A speedy and public trial by jury. [¶] c. Representation by an attorney at all times. [¶] d. See, hear, and question all witnesses who testify against me. [¶] . . . [¶] 11. I understand that by this plea and any admissions I am making, I give up all the rights which are listed above except the continuing right to be represented by an attorney."

At the change of plea hearing, the prosecutor summarized the plea agreement as follows: "A plea of no contest to Count 5 and a plea of no contest to Count 6. All sentencing options would be open to the Court. The Court could consider all aggravating factors. That's the stipulation under 1170(b)"—a maximum potential exposure of 10 years. Defense counsel agreed. Defendant also stated that was his understanding of the negotiated disposition.

Prior to accepting defendant's no contest pleas, the court reviewed the plea form with him and defendant personally confirmed that he read and understood it and had given up all the rights as stated therein, including his "right to have a jury trial." He also confirmed he had had time to discuss his rights and defenses with his lawyer. Counsel, in turn, also assured the court

17

she was satisfied defendant "understands the consequences" of the no-contest felony plea. Counsel further stipulated that the preliminary hearing transcript could be used as a factual basis for the pleas, observing defendant was "not admitting guilt in any way."

The trial court proceeded to admonish defendant that "by entering into this plea, you are giving up various rights," including "the right to have a jury trial." The court additionally identified the rights to remain silent, to present evidence, to confront his accusers, and to appeal any legal errors up to the change of plea. After these admonishments, the court again asked defendant if he "waive[d] these rights in order to enter into this deal that you have worked out." Defendant answered, "Yes."

The prosecutor then asked that the minutes also specifically reflect "the parties' stipulation under Penal Code section 1170(b)(2) as to what the Court can consider at sentencing," and specifically that the court could consider "all aggravating factors" "in [r]ule 4.421." The court responded: "In other words, you are talking about the parties stipulat[ing] that the Court can consider all aggravating factors listed on the form?" Defense counsel agreed.

The court then proceeded to take defendant's no contest pleas and found them knowingly and voluntarily made, stating "I find you have done so [i.e., pled to the felonies and waived his rights] here in open court, that you understand the contents of the felony [plea form] as well as the penalty and consequences."

At the sentencing hearing, the prosecutor and defense counsel confirmed that the negotiated disposition included that the trial court would consider all sentencing factors, both aggravating and mitigating. Defense counsel agreed there was a "[s]tip to all aggravating factors for the Court to be considered," so "[t]he options open to the Court are probation with jail time

18

all the way up to the ten years. And that would be the eight years with one-third the middle term of two if the Court decided to run it consecutive."

As our Supreme Court has explained, there is a distinction between what is *constitutionally* required for a valid jury waiver and what may be *statutorily* required under state law. (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 171 (*Sivongxxay*). In *Sivongxxay*, the defendant advanced two jury trial arguments: one, that his waiver of a jury trial as to guilt had not been sufficiently informed by a more detailed recitation of the rights he was waiving, and two, that the jury trial advisements and colloquy prior to trial had not made specific reference to the special circumstance allegation, which the trial court, after finding defendant guilty of the charged crimes found true, and pursuant to which it imposed the death penalty. (*Id.* at pp. 157, 164–176.) The high court rejected both. Its holding as to the defendant's second argument is particularly pertinent here.

The defendant did not, explained the court, "argue that he was unaware of the special circumstance, or that he did not appreciate that he could receive the death penalty if it were found true. Rather, he emphasize[d] that the trial court never explicitly told him that he had a right to a jury trial for the special circumstance allegation. Defendant argue[d] that this omission, viewed in the context of the record as a whole, means that he cannot be understood to have entered a valid waiver of his right to a jury trial for this allegation."[15] (*Sivongxxay, supra,* 3 Cal.5th at p. 171.)

_____

[15] The defendant complained both that " 'the trial court made no mention of the special circumstance determination or the right to a jury trial thereon' " during the pretrial proceedings and that defense counsel "never stated on the record that he had discussed the special circumstance determination with his client." (*Sivongxxay, supra,* 3 Cal.5th at p. 170.)

This, said the high court, "demand[ed] more than the federal and state Constitutions require for a valid waiver of the jury trial right. As [the court had] discussed, a knowing and intelligent jury waiver requires an appreciation of the nature of the jury trial right and the consequences of forgoing this right. [Citation.] There is no additional constitutional requirement that a defendant be specifically advised of the specific charges, enhancements, allegations, or other issues to which a general jury waiver will apply. On the contrary, with a comprehensive jury waiver such as the one entered below, absent unusual circumstances not present here ' "[i]t is settled that where a defendant waives a jury trial he is deemed to have consented to a trial of all of the issues in the case before the court sitting without a jury." ' ([Citations]; see generally 6 LaFave et al., Criminal Procedure (4th ed. 2015) § 22.1(h), p. 48 ['A jury waiver generally waives the right to a jury determination of all of the elements of an offense, including facts that authorize a higher sentencing range, treated as elements under the Court's *Apprendi* line of cases'].)[16] Under this prevailing rule, our earlier determination that defendant's general waiver of a jury trial was knowing and intelligent is sufficient in itself to defeat defendant's contention that his waiver did not meet constitutional standards with regard to the special

---

[16] The high court also noted "The relevant section of the LaFave treatise further provides: 'When a jury trial of guilt and enhancements are separated, a defendant convicted by jury at the earlier phase should have an opportunity to waive a jury for the enhancement phase.' (6 LaFave, *supra*, § 22.1(h), p. 48.) In this case, of course, there is no issue presented with regard to whether a defendant who has invoked a jury trial as to guilt or innocence may waive a jury with regard to a charged special circumstance allegation." (*Sivongxxay, supra,* 3 Cal.5th at p. 172, fn. 6.)

circumstance allegation.  (*Sivongxxay, supra,* 3 Cal.5th at pp. 171–172, italics omitted.)

The court went on to say that even if it "were to assume that—contrary to the conventional rule—a constitutionally sufficient general jury waiver does not necessarily incorporate a knowing and intelligent waiver of a jury trial for a special circumstance allegation in a capital case," "the specific advisements the trial court provided to [the] defendant before taking his waiver, together with the other surrounding circumstances, confirm[ed] that defendant knowingly and intelligently relinquished his right to a jury trial for this allegation."  (*Sivongxxay, supra,* 3 Cal.5th at p. 173.)

The trial judge had explained "that in a court trial he alone 'would make the decision on whether that evidence was sufficient to prove [defendant's] guilt beyond a reasonable doubt,' and 'In the event [he] made such a finding,' the case would proceed to a penalty phase, at which time it would 'fall upon [the judge] to make the decision as to the appropriate punishment, which could result in a death penalty sentence.'  The ultimate question posed to defendant was 'Do you give up your right to a jury trial and agree that this Court, alone, will make those decisions. . . ?'  After defendant answered in the affirmative, the trial court observed that the waiver applied to 'all issues' in the trial."  (*Sivongxxay, supra,* 3 Cal.5th at p. 174.)  "Viewed together with all other relevant circumstances, this colloquy demonstrate[d] beyond any dispute that defendant's waiver incorporated a knowing and intelligent declination of a jury trial for the special circumstance allegation. The trial court's advisement conveyed that defendant had a right to a jury trial with regard to all issues as to which an adverse determination could expose him to the death penalty—which included the special circumstance allegation—and that with his waiver, defendant would be giving up that

21

right.  Defendant's ensuing assent to a bench trial therefore manifested a knowing and intelligent waiver of his jury trial right with regard to the special circumstance allegation."  (*Ibid.*)

The court majority reiterated the point in responding to the dissent's conclusion to the contrary, stating "The dissenting justices apparently read the trial judge's advisements differently, perceiving the failure to expressly refer to the special circumstance allegation as somehow implicitly excluding that allegation from a counseled and otherwise comprehensive jury waiver.  (See conc. & dis. opn. of Liu, J., *post*, at pp. 203–206; conc. & dis. opn. of Cuéllar, J., *post*, at pp. 218–219.)  We respectfully disagree with this interpretation of the colloquy, for the reasons we have previously given.  The dissenting justices' position boils down to the proposition that the judge was constitutionally bound to utter the phrase 'special circumstance' at some point in the waiver colloquy with defendant, even if the judge never went on to explain what this phrase meant.  But our waiver jurisprudence rejects the notion that a knowing and intelligent waiver hinges on the recitation of a ' "talismanic phrase." '  [Citations.]  The fact of the matter is that the dissenting justices, like defendant, would require a degree of elaboration and specificity in a jury waiver colloquy that has never been demanded for a jury waiver to be considered knowing and intelligent under constitutional standards."[17]  (*Sivongxxay*, *supra*, 3 Cal.5th at pp. 175–176, fn. & italics omitted.)

_____

[17]  We note that in *French,* the high court concluded the defendant had not forfeited his constitutional claim that he was entitled to a jury trial of aggravating facts, stating "At the time that defendant entered his plea of no contest, he expressly waived his right to a jury trial on the substantive offenses, but this waiver did not encompass his right to a jury trial on any aggravating circumstances.  The absence of such an explicit waiver is not

surprising.  When defendant entered his plea, *Blakely* had not yet been decided, and prior to that decision 'it was widely assumed that for the purposes of the rule established in *Apprendi,* the maximum term authorized by the jury's verdict was the upper term.'  [Citation.] . . .  Defendant's waiver of jury trial on the offenses in connection with his no contest plea cannot reasonably be interpreted to extend to proof of aggravating circumstances when, at the time of the plea, no right to a jury trial on such circumstances had been recognized.  Defendant did not forfeit his Sixth Amendment right by failing to request a jury trial on the aggravating circumstances, and his claim must be addressed on the merits." (*French, supra,* 43 Cal.4th at p. 48, fn. omitted.)

Both the majority and dissenting opinions in *Sivongxxay* make clear this statement in *French* applies where no jury trial right has yet been recognized.  The majority's discussion is set forth above.  In his dissent, Justice Cuéllar stated, "The gist of defendant's claim is that the record fails to show he was aware of his right to a jury trial on this phase of the trial or that he waived it.  *State v. Williams* (2005) 197 Ore.App. 21 . . . presents an analogous situation.  Williams similarly was unaware that he had the right to a jury finding of the facts that could trigger an enhanced sentence; his trial had predated *Blakely*[*,supra,*] 542 U.S. 296 . . . , which held that a criminal defendant has a federal constitutional right to have a jury find the facts that could subject him to a sentence greater than the statutory maximum.  The *Williams* court reasoned that no waiver could be implied in those circumstances unless the record showed that the defendant was aware both of ' "the right to have a jury determine the aggravating factors" ' and that ' "he was waiving that right." ' (*Williams*, at p. 1152; accord, *People v. French*[, *supra,* 43 Cal.4th at p.] 48 . . . [because the defendant entered his plea pre-*Blakely*, his jury waiver on the substantive offense 'did not encompass his right to a jury trial on any aggravating circumstances']; *State v. Schofield* (2005) 2005 ME 82. . . .)  Unlike the majority, I see no meaningful distinction in the fact that Williams was unaware of his jury trial right because of an intervening change in the law, while defendant was unaware of his jury trial right because it was never mentioned anywhere in the colloquy. (Cf. maj. opn., *ante*, at pp. 172–173, fn. 7.)" (*Sivongxxay, supra,* 3 Cal.5th at pp. 222–223 (dis. opn. of Cuéllar, J.).)

Here, in contrast, at the time defendant pleaded no contest, the constitutional right to jury trial on facts in aggravation was well established.

23

The court reached a different conclusion with respect to the defendant's *statutory* right to jury trial on a special circumstance allegation as elucidated by the court in its prior decision in *People v. Memro* (1985) 38 Cal.3d 658 (*Memro*), overruled on another ground as stated in *People v. Gaines* (2009) 46 Cal.4th 172, 181, footnote 2.[18] (*Sivongxxay, supra,* 3 Cal.5th at pp. 176–178.) In *Sivongxxay*, "[t]here was no specific reference in the waiver colloquy to the need to adjudicate the special circumstance allegation; the term 'special circumstance' was never mentioned at all. Although such precision [was] not required for a knowing, voluntary, and intelligent waiver, [the high court believed] that *Memro*'s requirement of a 'separate waiver,' " even as that rule was clarified in subsequent cases, "demand[ed] at least that much specificity." (*Sivongxxay, supra,* 3 Cal.5th at pp. 177–178.) Thus, although the court recognized the line it was drawing was "a narrow one," it held the defendant's "purported waiver as to the special circumstance determination was deficient, as a matter of state law." (*Id.* at p. 178.)

Given the clarity of the record here that defendant knowingly and voluntarily waived his right to jury trial generally and did so fully advised and personally agreeing in open court that the negotiated disposition included that the court would consider all aggravating circumstances, we conclude defendant's jury waiver was constitutionally sufficient and extended to all issues, including aggravating factors. Indeed, defendant has made no challenge to his jury trial waiver with respect to his no-contest pleas and

---

[18] "*Memro* construed the [then-applicable] statutes (as enacted by the Legislature in 1977, see Stats. 1977, ch. 316, §§ 7, 12, pp. 1257, 1260), read together, as requiring a 'separate, personal waiver' of the right to a jury for a special circumstance allegation, above and beyond the standard guilt phase and penalty phase waiver." (*Sivongxxay*, *supra,* 3 Cal.5th at p. 176.)

conviction of two counts of lewd and lascivious acts on a child under the age of 14 years. He has thus conceded the validity of his jury trial waiver as to guilt, and under *Sivongxxay,* that *alone* is sufficient basis to reject defendant's jury trial waiver challenge as to the court's determination of sentencing factors. (*Sivongxxay, supra,* 3 Cal.5th at p. 172 ["our earlier determination that defendant's general waiver of a jury trial was knowing and intelligent is sufficient in itself to defeat defendant's contention that his waiver did not meet constitutional standards with regard to the special circumstance allegation"].) We also observe that, like *Sivongxxay*, this is not a case where the defendant did not waive his right to jury trial as to guilt but assertedly did so as to bifurcated sentencing issues. (*Id.* at p. 172, fn. 6.)

And even if defendant's general jury trial waiver did not extend to sentencing issues, we would conclude, as did the Supreme Court in *Sivongxxay,* that the record, "[v]iewed together with all other relevant circumstances" (*Sivongxxay, supra,* 3 Cal.5th at p. 174), demonstrates defendant understood he had a right to jury trial as to all issues and, as part of the negotiated disposition, he was foregoing a jury determination of *any* issue. The trial court squarely asked defendant, "Do you waive these rights [including the right to jury trial] in order to enter into this deal that you worked out?"—a deal that expressly included the court considering factors in mitigation and aggravation. Moreover, the court asked defendant this question *after* the prosecutor and defense counsel made a point of emphasizing that the court would be making findings as to both aggravating and mitigating sentencing factors. Defendant also confirmed he had had sufficient time to speak with his attorney, and counsel likewise told the court she was "satisfied [defendant] understands the consequences of" the felony plea.

The recent decision in *People v. Kinnear* (2025) 116 Cal.App.5th 1116 (*Kinnear*), which defendant submitted after he had filed his petition for rehearing of our decision on remand, and which prompted us to grant rehearing on our own motion, does not support a different result. To begin with, that was a case in which the issues of guilt and sentencing factors were bifurcated and the defendant did *not* waive jury trial on the issue of guilt. Rather, after a jury found him guilty of making criminal threats, he supposedly stipulated to an alleged prior conviction and aggravating factors. (*Id.* at p. 1120.) Thus, that case, unlike *Sivongxxay* and the case now before us, did not involve a general jury waiver and thus did not involve the "conventional rule" that " ' "where a defendant waives a jury trial he is deemed to have consented to a trial of all of the issues in the case before the court sitting without a jury." ' " (*Sivongxxay, supra,* 3 Cal.5th at pp. 172–173.)

Furthermore, after the jury found Kinnear guilty, the only colloquy that occurred was as follows: The prosecutor stated it was his understanding the defendant " 'wants to stipulate to the priors and the aggravating factors.' " (*Kinnear, supra,* 116 Cal.App.5th at p. 1122.) The court then recited there was an allegation of a prior strike offense and it was alleged " 'there are aggravating factors which could make your sentence longer,' " namely a prior prison term and the new offense was committed while he was on supervision or parole. (*Ibid.*) After these perfunctory remarks, the court asked Kinnear, " '[d]o you now stipulate or agree that you suffered the prior strike and the aggravating factors are, in fact, true?' " (*Ibid.*) Kinnear replied, " 'Yes, sir.' " (*Ibid.*) As we have recited at length, the record before us is *profoundly* different, as was the record before the high court in *Sivongxxay*.

In short, given the record in *Kinnear*, which bears no similarity to the record here or in *Sivongxxay,* we have no disagreement with the appellate court's holding in that case that the defendant did not waive his right to a jury trial and did not enter into a knowing and voluntary stipulation as to the sentencing enhancements and allegations.

## DISPOSITION

The judgment is AFFIRMED.

_____
Banke, Acting P. J.

We concur:


_____
Langhorne Wilson, J.


_____
Smiley, J.


A165406, People v. Hall